## THE CITY OF ATLANTA v. BURTON.

The charter of the City of Atlanta declaring that the board of water commissioners shall have the power to " require the payment in advance for the use or rent of water furnished by them in or upon any building, place or premises, and in case prompt payments shall not be made, they may shut off the water from such building, place or premises, and shall not be compelled again to supply said building, place or premises with water until said arrears, with interest thereon, shall be fully paid," such board may enforce these provisions without requiring payment in advance for water furnished, and may lawfully demand, as a condition precedent to again supplying with water any premises from which it has been cut off for non-payment of the proper charges, the payment thereof with in-

terest by the person desiring the water to be turned on, although such person may be in no arrears for water charges, and the same may have been incurred by a former occupant of the premises in question. The exaction of such payment being lawful, and the water supply having been renewed in consequence thereof, no action lies against the city for the recovery of the amount so paid.
October 17, 1892.

Municipal corporation. Water rate. Duress. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1892.

The City of Atlanta ordained that all water-closets having sewer connection "shall also have proper water connection from the city water-works, or from private windmills or water works where there is an ample flow of water, and all of said water-closets shall be so flushed with water of sufficient flow and strength as will prevent the accumulation of offensive matter, and will safely and promptly carry off the same into the sewer"; and that any person using, controlling or owning water-closets not thus provided, shall be punished by fine or imprisonment, on conviction before the recorder. The plaintiff rented and occupied a room in a house containing a closet connected with a sewer, of which house one Purcell was the tenant, to whom the plaintiff paid rent, also one half of the water rent. Purcell gave up the house, and plaintiff rented it from Adair. The water had been cut off on account of Purcell not paying the water rate. The sanitary officer told plaintiff she could not use the closet unless it was flushed from the water-works. She went to the commissioners and asked that the water be turned on; they refused to turn it on, unless she paid the bill owed by Purcell, which she refused to do. She was summoned to appear before the recorder, to whom she stated her case, and told him that she always kept the closet clean by having water poured into it. He told her that unless she used the water from the water-works, he would have to put a fine on

her; and continued the case for a few days. She was compelled to pay Purcell's bill of $17.60, before she could get the water, and paid the same under protest. After this payment the water was turned on, and the recorder dismissed the case against her. She then sued the city for the amount so paid, and recovered judgment which, on *certiorari*, was sustained. The city excepted.

J. B. GOODWIN, J. A. ANDERSON and GEORGE HILLYER, for plaintiff in error.

No appearance *contra*.

LUMPKIN, Justice.

There can be no doubt, we think, that the provision of the charter of Atlanta quoted in the head-note did not contemplate an exclusively cash system in the furnishing of water by the city. If this had been intended, nothing would have been said about "arrears, with interest thereon." It is true that if the city required monthly payments in advance, which would be the only way of enforcing a strictly cash system, a citizen might make default in paying at the beginning of a particular month, but his water would be promptly cut off, and there could be no charge against the premises he occupied for either arrears or interest. To require payments at the end of each month would be neither more nor less than to have a credit system, under which there could be, in cases of default, arrears upon which interest would accrue. Clearly, then, the board of water comsioners have authority under the charter to furnish water on credit. The section of the charter from which the above extract is taken is operative *proprio vigore*, and needs nothing to make it effectual. The city authorities could not, by ordinance or rule, do anything more than the charter permits, nor could they thus make its provisions as to the matter in question plainer or more readily capable of enforcement.

It will be observed that the water is not furnished to individuals or to persons of any kind, but is furnished to buildings, places and premises; and doubtless the charges in the books of the water board are made accordingly. The charter did not contemplate nor intend that water should be furnished upon individual or personal credit, but that the supply should be made a charge upon the property to which the water was conveyed. It is somewhat analogous to a lien for taxes, which attaches to the property itself, and for the payment of which the property is subject; with this difference, however, that while the lien for taxes attaches without the consent of the owner, no charge for water can arise against any premises unless the owner or occupant thereof has voluntarily requested the supply to be turned on. We do not, of course, mean to rule that one who orders water is not liable to pay for it, but are simply showing the right of the city to enforce payment for water furnished by making the amount due for it a charge on the property supplied with it. Therefore, when any particular building or premises is in arrears for water charges, the city does not demand of the present occupant the payment of a debt due by a former occupant, for which the latter is doubtless liable, but simply exercises its right to require that its proper charge against this building or premises shall be paid before again supplying it with water. To persons who are diligent, this reasonable regulation will not operate as a hardship. It is a very easy matter to ascertain, before buying or renting property, what charges stand against it for water already furnished, and provide against being required to pay the same in making the contract to purchase or rent. A very little reflection will suffice to show that when water is furnished on credit at all, some such system as the one above set forth is absolutely necessary to save the city

from numerous and constant losses, which would simply increase the burdens of those who do pay promptly for the water they consume, as well as of all other taxpayers of the city. Indeed, it would be impossible to furnish water on credit to persons having no visible property with any degree of safety, and as a consequence, this class of persons, who are entitled to have and ought to receive the benefits of the city waterworks, would thus be deprived of their water supply unless they were compelled to pay in advance, a requirement which would be manifestly unjust unless imposed upon all consumers alike. We therefore think that the provisions of the city charter on this subject are both fair and just, and no good reason appears why they should not be enforced.

The existence of an ordinance requiring all persons using water-closets with sewer connections to provide proper means for flushing the same with water from the city water-works, or from some other source from which a supply can be obtained of sufficient flow and strength to prevent the accumulation of offensive matter and to promptly and safely carry the same into the sewer, presents no valid objection against the propriety and justice of the regulation concerning the furnishing of water by the city and the collection of charges for the same. The city does not require or compel any citizen to take or use water from the water-works, and hence no property can become liable to charges for the city's water unless the owner or occupant thereof so desires. The city does require, as a sanitary measure, that water-closets shall be properly flushed and kept clean. Of the necessity and wisdom of this requirement there can be no possible question A citizen, however, is left free to obtain his water supply from private water-works or from any other source he pleases, provided only it be adequate and sufficient for the purpose designed.

The doctrine that a city has a right to shut off water from premises for non-payment of charges, and keep it shut off until the arrears are paid, is sustained by Girard Life Ins. Co. *v.* Philadelphia, 88 Pa. St. 393; Com. *ex rel. v.* Philadelphia *et al.*, 132 Pa. St. 288; and Sheward *v.* Citizens' Water Co., 90 Cal. 635; and no doubt many other decisions to the same effect could readily be found. It follows that the payment of arrears in water charges by one in possession of a building, although such arrears had accumulated while it was occupied by a former tenant, is lawful, and the money cannot be recovered back from the city. Nor does it matter that the payment is made under protest and solely for the purpose of obtaining a supply of water in order to escape punishment for failing to keep a water-closet properly flushed, as required by the ordinance above mentioned. The city having, as has been shown, the right to require such payment as a condition precedent to again supplying the premises with water, the motive or reason of the person for paying the charges and having the water again turned on is of no consequence whatever.　　*Judgment reversed.*