MAYOR & ALDERMEN OF SAVANNAH *et al. v.* KNIGHT.

No. 7890.   FEBRUARY 24, 1931.

*John J. Bouhan* and *E. Ormonde Hunter,* for plaintiffs in error. *O'Neal & O'Neal,* contra.

HINES, J.   Knight was the owner of lots with a frontage of 234

feet on Harmon Street, lying between the north side of Gwinnett Street and the south side of Wheaton street, in the City of Savannah. This section of Harmon Street had been paved with brick, and the owners of lots abutting on both sides of this street had been assessed for two thirds of the cost of this pavement, which they paid. This pavement was entirely suited for ordinary traffic, was in good condition, and would have continued so for many years to come, had not the city permitted the Savannah Electric & Power Company to operate over said street heavy passenger buses, which, when loaded with 50 to 80 persons, imposed an excessive burden on said paving. On this account the paving on this street began to give way, the brick were displaced, and a large number of them were forced from the street upon the sidewalks. This condition was known to the city, but it permitted these buses to operate until this section of this street became so full of holes that they could no longer travel over this street. The city is now undertaking, by various resolutions and proceedings, to remove said pavement from this section of this street and to repave the same with such material as may be determined by council upon receipt of bids for such work, based upon the use of different materials, or upon information received by the director of public works, as set out in an ordinance of the city. The director of public works has notified Knight that the paving material on this street and the paving thereof has been condemned, and that the city will shortly take up the same. If such pavement is taken up and replaced, the ordinance provides that two thirds of the cost of such work will be assessed against the owners of abutting property, and the same will become a lien upon Knight's property. The pavement on this street was not worn out or useless, was being used by the ordinary traffic of the city and would still be in good condition had not the city abused its discretion by permitting the electric company to use this street for the purpose of transporting passengers in unusual and extremely heavy vehicles, which caused the paving on this street to give way. This action of the city is without authority of law, amounts to an abuse of its discretion, and is oppressive in that the city permitted this street to be used by a public carrier for the purpose of carrying passengers for private gain in a manner and with vehicles which it knew would render an unusual burden upon this street and which destroyed the pavement

thereon; and it is an attempt to require the owners of abutting property to make good the damage done to the street by the public carrier.

Knight filed his petition against the Mayor and Aldermen of the City of Savannah, the director of public works, and the Dixon Construction Company, a partnership composed of M. W. Dixon Jr. and J. W. Bond, in which he alleged the facts above set out; and in addition made these allegations: The assessment for the repaving of this section of Harmon Street, and the lien sought to be fixed upon his abutting lots, constitute a cloud upon his title. It is not proper that this street be repaved at the expense of owners of abutting property. It could be repaired at a sum far less than the cost of repaving the same. The mayor and aldermen have abused their discretion in condemning the pavement and in adopting said ordinance for its repavement; all being to the oppression of petitioner and others similarly situated. This street was in good condition and suitable to the uses of ordinary travel, and would still be so had the mayor and aldermen not abused their discretion by permitting this company to use unusually heavy buses on this street when they knew or should have known that this street was not fitted to carry the burden of these buses. Petitioner prayed that the defendants be enjoined from proceeding with the proposed repaving of this portion of this street, from assessing the cost thereof against him, from levying assessments for said paving against his lots, and for general relief. The defendants moved to dismiss the petition, because it does not set forth any reason why equitable relief should be granted, because it is based upon a conclusion of the pleader that the mayor and aldermen abused their discretion in condemning this pavement, there being no allegation of sufficient facts to sustain said conclusion, and because the petition shows the street to be worn out, and the municipal authorities were acting within the scope of this authority in condemning this pavement.

The trial judge denied an injunction but overruled the motion to dismiss. To the latter ruling the defendants excepted.

The Mayor and Aldermen of the City of Savannah are authorized by the charter of that city to repave streets whenever the same are "worn out and no longer serviceable," and to assess the cost of such repavement against the lots which abut thereon. Acts 1887,

p. 538; Acts 1921, pp. 1075, 1080. It is likewise true, generally, that the determination of the question of the necessity of repaving a street, and of the character of the material to be used in so doing, is one primarily within the discretion of the municipal authorities; and the courts will not by injunction control such discretion, unless it has been manifestly abused to the prejudice of a complaining citizen. *Regenstein* v. *Atlanta,* 98 *Ga.* 167 (25 S. E. 428); *Burkhardt* v. *Atlanta,* 103 *Ga.* 302 (30 S. E. 32); *Bacon* v. *Savannah,* 105 *Ga.* 62 (31 S. E. 127). But the question now involved is this: Where a street had been paved and the cost of the pavement had been assessed against lots abutting thereon, and the cost had been paid by the owners of such lots, and where such pavement was not worn out but was in good condition, and was entirely serviceable for ordinary travel and traffic thereover, and would have so continued for many years but for the fact that the city permitted the Savannah Electric & Power Company, as a common carrier, to operate over such street heavy buses for the transportation of passengers for hire, whereby the brick paving on the street began to give way, and with knowledge of this fact the city permitted this company to continue to operate its buses over the street until it became unfit for travel over it, and it became necessary for the city to repave the street, should the lots of owners which abut on this street be assessed in whole or in part for the cost of the repavement of this street; and in the latter case, to what extent?

The theory upon which local assessments for street improvements can be laid upon owners of abutting lots is that such improvements, aside from the mere general advantage resulting to the community at large, will result in some special advantage to the particular owner, in which the general public do not participate. This special benefit to the lot owner is the circumstance which gives legal validity to a legislative act or municipal ordinance authorizing the assessment. Unless some special advantage or benefit result to the owner in consequence of the street improvement for and on account of which his property has been assessed, the effect of the assessment would be arbitrarily to deprive the citizen of his property, which is not permissible under our form of government, one purpose of which is to protect the individual in the enjoyment of his right of private property. This is the only theory upon which, under our form of government, such an assessment can be justified.

It can not be levied for any amount in excess of the benefits received by the owner from the improvement. *City of Atlanta* v. *Hamlein,* 96 *Ga.* 381 (23 S. E. 408) ; *Norman* v. *Moultrie,* 157 *Ga.* 388 (121 S. E. 391). The principle just announced by this court has been followed by the courts in many other jurisdictions. These courts hold that every assessment imposed to pay for a local improvement, which exceeds in amount the value of the benefits, actual or potential, that accrue to the assessed property from such improvement, is, at least to the extent of the excess, void. Adams v. Shelbyville, 154 Ind. 467 (57 N. E. 114, 77 Am. St. R. 484) ; Martin v. Wills, 157 Ind. 153 (60 N. E. 1021) ; Lincoln v. Commissioners, 176 Mass. 210 (57 N. E. 356) ; Corcoran v. Cambridge, 199 Mass. 5 (85 N. E. 155, 18 L. R. A. (N. S.) 187) ; King v. Portland, 38 Ore. 402 (63 Pac. 2, 55 L. R. A. 812) ; State v. Newark, 37 N. J. L. 415 (18 Am. R. 729) ; Frevert v. Bayonne, 63 N. J. L. 202 (42 Atl. 773) ; 44 C. J. 482 (§ 2808) 3, and cases cited in note 16. It has been declared that the principle is elementary that the amount of the assessment to be collected can not exceed the cost of improvement; and that it is equally true that a special assessment can not be levied against property in excess of the benefits resulting from the improvement. Bekkedal v. Viroqua, 183 Wis. 176 (196 N. W. 879, 197 N. W. 707). If there is no benefit to the property, the assessment amounts to confiscation. Bush v. Branson, 248 Fed. 377. There are decisions which hold that property is unconstitutionally taken without due process of law by assessments for public improvement in excess of the benefit conferred upon it by the improvement. Moore v. Yonkers, 235 Fed. 485 (9 A. L. R. 590) ; Staunton v. Bond, 281 Ill. 568 (118 N. E. 47) ; Dallas v. Atkins (Tex. Civ. App.), 197 S. W. 593; State v. Ely, 129 Minn. 40 (151 N. W. 545, Ann. Cas. 1916B, 189).

We have seen that the Mayor and Aldermen of the City of Savannah are authorized to repave streets of that city whenever the same are "worn out and no longer serviceable." Under this authority the city would have no right to repave a street which is not worn out and is still serviceable. If it should repave such a street, the lots of owners abutting thereon could not be assessed for the cost of such repaving. When under this authority and in pursuance thereof a worn-out and no longer serviceable street is repaved, the

lots of owners abutting on said street may be assessed for such repavement, provided additional benefits are received therefrom; but the assessment is always limited to the amount of the benefits so received. Ordinarily property should not be assessed for an improvement, where improvements theretofore made are sufficient for its needs, and no additional benefit from the new improvement results. 44 C. J. 587 (§ 2989) 5; Boyden v. Brattleboro, 65 Vt. 507 (27 Atl. 164); Rogers v. Salem, 61 Ore. 321 (122 Pac. 308); Meyer v. Board, 148 Ark. 623 (231 S. W. 12); Cincinnati v. Doerger, 98 Ohio St. 161 (120 N. E. 304); 1 Page & Jones on Taxation by Assessment, § 387. Both by sound reasoning and by the authorities cited, the City of Savannah could not pave this street and assess the owners of abutting lots for the cost of the improvement, if the same was not worn out and had not become unserviceable. It is likewise true that if the improvement of this street does not give additional benefits to the owners of these lots, the cost of the repavement can not be assessed against such owners.

But it may be said that the necessity for the repavement of this street now exists, and that the city is required to repave the same under its duty to the public. Undoubtedly the city is required to keep its streets in repair for ordinary travel over the same. If the pavement on this street had become worn out and no longer serviceable from ordinary travel thereover, the city, under the authority conferred upon it, could repave this street and assess the cost of the repavement against the lots of owners abutting thereon. The pavement on this street, however, did not become worn out and unserviceable by ordinary travel. When the pavement was in good condition and entirely suitable for ordinary traffic over this street, the city permitted a common carrier to operate its heavy and cumbersome buses for the transportation of passengers for hire thereon. The city permitted the company owning these buses to conduct its business of transporting passengers on this street; and by the running of these heavy laden buses over this street the pavement thereof was destroyed. It would not have been destroyed by ordinary travel over the same; but the pavement would have continued to be good and serviceable for years to come. The plaintiff had been assessed for and had paid the cost of the brick pavement upon this street, which was in good condition and serviceable for

ordinary travel over it until the city permitted this company to conduct its business of transportation of passengers by buses over this street, whereby the paving was destroyed and rendered unserviceable for ordinary travel. In these circumstances, should the plaintiff be assessed to pay the cost of new pavement on this street, or should the cost thereof be paid from the general funds of the city? Corporations do not have the inherent right to conduct their private business in or over the streets of a city. The transportation of passengers for hire in large and heavy buses is a privilege which the municipality could give or withhold. *Schlesinger* v. *Atlanta*, 161 *Ga.* 148 (129 S. E. 861); Frost *v.* Railroad Commission, 271 U. S. 583 (46 Sup. Ct. 605, 70 L. ed. 1101, 47 A. L. R. 457). If the city entertains the view that public necessity and convenience require the transportation of passengers for hire in such buses over its streets, and grants to a common carrier permission so to use its streets, by which the pavements thereof are worn out and destroyed, then the cost of replacing pavements should be borne in whole, or at least in part, as the facts may justify, from the general funds of the municipality. If the repavement gave no additional benefit to the lots abutting on the streets, then no part of the cost of repaving the streets should be charged to the owners of lots abutting thereon. If the new pavement provided additional benefits to the lots abutting on the streets repaved, the amount of the assessment against the lots should be limited to the amount of the benefit so received; but, as we have said, such lots should not be assessed for an improvement where improvements theretofore made upon them were sufficient for the needs of the lots and no additional benefit results from the new improvement.

Furthermore, the authority of the city to pave and repave its streets and to assess abutting lots for the cost of the improvement is confined to paving and repaving for ordinary travel over them. It is without power and authority to permit its streets, which are already suitably paved for ordinary traffic over them, to be used by carriers, whether common or private, for the transportation of passengers for hire, whereby the pavements thereon are destroyed, and then to repave them and assess the lots abutting thereon for the cost of the improvement. This would amount to taking private property for public use, with the additional vice of taking it for

private use and gain. We have seen that carriers for hire have no inherent right to use the streets of a city for the conduct of their business of transporting passengers over them. If the city grants permits to such carriers to carry on their business of transportation for gain over its streets with buses of such capacity and tonnage as will destroy the pavements which are not worn out and are serviceable for ordinary traffic, whereby such pavements are destroyed, then the cost of the new improvement should be paid for from the general funds of the city, if the city does not wish to impose the burden of repaving upon the carriers for the privilege of conducting their business upon the public thoroughfares. The power to pave streets and to assess the cost thereof against the lots abutting upon the streets is confined to paving suitable for ordinary travel; and the power to repave streets, when worn out and no longer serviceable, and to assess the cost of such repaving against the lots abutting thereon, is confined to cases where such pavement has been worn out by ordinary travel over such thoroughfares.

So we are of the opinion that the learned and wise trial judge properly overruled the motion, in the nature of a general demurrer, to dismiss the petition in this case.

*Judgment affirmed. All the Justices concur.*

HILL, J., concurs in the result.