**59319, 59633. PEASE et al. v. CITY OF COLLEGE PARK et al.; and vice versa.**

BIRDSONG, Judge.

Summary judgment. Nine named trustees of Wachovia Realty Investments brought a complaint against the City of College Park, its mayor, and council members. The suit contended that Wachovia was the owner by way of foreclosure of an apartment complex in College Park, which complex was furnished water, electrical and sewage services (i. e., ordinary utility services) by the City of College Park. The prior owner (Wachovia's mortgagee) was delinquent in utility charges in the amount of $139,014.14. College Park refused to furnish utilities services to Wachovia unless and until Wachovia paid the $139,000 delinquent bills owed by Wachovia's predecessor in title. College Park additionally threatened to shut off utilities service if Wachovia did not make the delinquent payment. Wachovia offered to pay for all necessary fees, deposits and charges now due as a new user on and after the date of its ownership but declined to pay the arrearages. Wachovia brought a declaratory judgment action seeking to forestall the turnoff of service and to determine its liability as to payment for its ex-mortgagee's delinquencies. College Park additionally sought to have a lien declared against the property for the delinquent charges, the lien to have precedence over Wachovia's title inasmuch as the delinquency occurred prior to Wachovia's foreclosure.

The trial court did not address certain constitutional issues raised by Wachovia but limited its judgment to the question of whether the City of College Park was entitled to a lien on the property and whether a present owner can be pecuniarily liable for a prior owner's utility debts. Both Wachovia and College Park moved for summary judgment. The trial court granted summary judgment to Wachovia as to liability insofar as an obligation for electrical and water service was concerned but granted summary judgment to College Park as to sewage system services and sanitary services with a concomitant lien against the property insofar as sewage and sanitary services were concerned. Both parties have filed appeals to the partial grant of summary judgment to the adversarial party. *Held:*

College Park bases its claim to a lien and payment for delinquent utility charges upon certain corporate charter provisions. Ga. L. 1908, p. 544, 545-546, provides in part: ". . . The mayor and council shall have the power to cause the enforced collection of delinquent taxes and *assessments* of all kinds of fines and executions against the property of the delinquent and sales under executions."

(Emphasis supplied.) Ga. L. 1908, p. 547, 548 grants College Park Power ". . . to purchase, build, contract for, establish, maintain and operate an electric light system for said city, to supply and furnish light, heat and power by electricity for said city, and to furnish the said city and private parties with electrical current for such purposes as may be practicable, and to charge and collect for the same . . . ."

Ga. L. 1956, p. 2922, § 2 provides: ". . . the Mayor and Council of the City of College Park shall have full power and authority to provide for the *assessment* and collection of a charge for the use and maintenance of the sewer system of the City of College Park. The amount of all such *assessments* may be collected by execution, levy and sale as in the case of *assessments* for street improvements and the defendant in such an execution shall have the right to file an affidavit, denying that the whole or any part of the amount for which the execution is issued, is due, stating what amount he admits to be due, which amount so admitted to be due shall be paid or collected before the affidavit is received, and the affidavit so received shall be returned to the Superior Court of Fulton County and there tried and the issue determined as in cases of illegality, subject to all the pains and penalties provided in cases of illegality for delay. All such *assessments* shall constitute a lien upon the real estate." (Emphasis supplied.)

Finally, Ga. L. 1941, p. 1270, § 2; Ga. L. 1951, p. 2797, § 6 provides: "Beginning with and including the year 1941, the mayor and council of the City of College Park shall have the power and authority to *assess,* levy and collect annual or monthly sanitary taxes in such amount or amounts, and based upon and in accordance with such classification of property and/or sanitary service or services, provided, as may be fixed by ordinance of said city; which sanitary taxes and the *assessment* thereof shall be a charge and lien against the real estate in respect of which said taxes are so *assessed,* and the owner or owners thereof, superior to all other liens except liens for taxes or other *assessments;* and said mayor and council shall have the power and authority to enforce the collection of any *assessment* so made by execution to be issued by the city clerk against the real estate and against the owner thereof, for the amount so *assessed,* which execution shall be levied and the property advertised and sold in the same manner and with the same effect as tax executions are now levied and property sold thereunder, by said City of College Park." (Emphasis supplied.)

This enabling legislation uses the terms "assessments" and "charges." Black's Law Dictionary, Fourth Ed. (1951), p. 149, defines "assessment": "In a general sense, the process of ascertaining and adjusting the shares respectively to be contributed by several persons

toward a common beneficial object according to the benefit received." Webster defines "assessment" as "a valuation, and adjudging of the sum to be levied on the property." On the other hand "charge" is defined as "to fix or ask a sum as a fee or payment; to record a debt, obligation or liability against." Webster's Third New International Unabridged Dictionary (1976), p. 377.

Before examining more in depth the language of the enabling legislation and the judicial interpretation of similar legislation, we believe it expedient to set forth certain matters of common knowledge. In this modern land, certain conveniences are available and taken for granted. We expect "indoor plumbing," heating, water, light and nowadays, air conditioning. Household power generally comes from the measured use of electricity. The cost of that electricity normally is dependent upon both the unit rate and the quantity used. Similar cost and use factors are the basis of water charges. Moreover, users are categorized such as private, business, industrial, etc. It is not unusual to charge slightly different unit rates dependent upon the character of the user. As for sanitary services, it is normal to charge users, depending upon the nature of the user (i. e., residential, industrial, commercial, etc.) an established rate for garbage collection irrespective of the amount of garbage collected. These rates are charged periodically in the forms of taxes or assessments and collected at the stated periods. On the other hand, it is normal for sewage disposal costs to be a pro rata amount fixed by the quantity of water used by the consumer, for the modern sewage disposal system typically depends upon disposal by the use of water. Thus, sewage costs are dependent upon the amount of water used and the amount of the charge will vary with individual use of water by the customer. However, certain sewer system charges are not dependent upon the use of a commodity. For instance, sewer connections, underground repairs, sewer pipes brought into a community, storm drains (as are electrical wires and poles) are one-time costs normally borne by assessments and taxes against the adjacent property. These charges are generally uniform and not dependent upon a fluctuating use of a product such as water or electrical current.

As we examine the enabling legislation of the City of College Park, we readily discern therein the distinction we have made in the preceding paragraph of this decision. Thus the charter enables the mayor and council to *assess taxes* for sanitary services based upon the classification of property or service provided and such taxes constitute a charge against the real estate to which the service is rendered. As to a sewer system, the same general powers are conferred. The charter authorizes an assessment for the establishment and maintenance of a sewer system. A charge may be

imposed for the use of that system. The enabling legislation also grants to the city a lien upon property for the assessments imposed based upon the establishment and maintenance but no similar lien is recognized in the sewer system legislation pertaining to the charge for use of that system.

Consistently, the charter confers upon the city in relation to electrical power (and inferentially, other city-furnished commodities) only the right to *charge and collect* for the same. There is no mention of an equivalent power to assess taxes to enforce collection of the charges nor that such charges constitute a charge and lien against the property to which the service is furnished. We conclude there was a legislatively intended distinction between the assessment of a tax and the establishment of a charge.

The City of College Park apparently recognizes the distinction in terminology between assessing for taxation with concomitant lien against the serviced property and the simple charging and collecting for a product furnished. However, College Park argues that the term "assess" is the substantial equivalent of "charge" and that under its charter, it has the right to cause the enforced collection of delinquent assessments "of all kinds" of executions against the property of the delinquent and sales under executions. Thus as a matter of "policy" and judicial interpretation, College Park asserts its lien against Wachovia's property for the unpaid utility charges. We do not agree that the terms are synonymous.

College Park places great emphasis upon the case of *City of Atlanta v. Burton,* 90 Ga. 486 (16 SE 214). The headnote of that case concludes that the charter of the City of Atlanta empowered the water commissioners to require the payment in advance for use of water furnished to a *building.* If prompt payment was not made for such use, water could be shut off from the building and did not have to be again turned on until the arrears, with interest, was fully paid. The commissioners could demand as a condition precedent to continued furnishing of water to the premises, the payment of back charges by the person occupying the premises, although such person was not in arrears and was not the person who incurred the delinquency. In discussing this power, the court said at p. 489: "It will be observed that the water is not furnished to individuals or to persons of any kind, but is furnished to buildings, places and premises; and doubtless the charges in the books of the water board are made accordingly. The charter did not contemplate nor intend that water should be furnished upon individual or personal credit, but that the supply should be made a charge upon the property to which the water was conveyed. It is somewhat analogous to a lien for taxes, which attaches to the property itself, and for the payment of

which the property is subject . . . " The *Burton* case, supra, was generally followed by *Dodd v. City of Atlanta,* 154 Ga. 33, 36 (1) (113 SE 166) (but *Dodd* involved a connection charge). Both the *Burton* and *Dodd* cases, supra, were cited with approval in *Bowery Savings Bank v. DeKalb County,* 240 Ga. 528 (242 SE2d 50). The factual situation in *Bowery Savings Bank* is almost identical to that in the present litigation. In that case, Bowery Savings Bank had foreclosed on a security deed upon property owned by its mortgagee. The bank sought continued utility service from DeKalb County for its tenants. DeKalb County refused further service until the bank paid certain delinquent charges accumulated by the bank's predecessor in title (the bank's mortgagee). Our Supreme Court held at p. 530: "We adhere to our cases of *City of Atlanta v. Burton,* 90 Ga. 486 (16 SE 214), *Dodd v. City of Atlanta,* supra, and *Harrison v. Jones,* 226 Ga. 344 (175 SE2d 26) (1970). These cases hold essentially that *under ordinances such as [that discussed in Burton, supra]* delinquent charges for water, sewerage, and sanitation services constitute a lien against the property served. . . These cases are modified by Davis v. Weir,[(497 F2d 139, 145) (5th Cir. 1974)], to the extent that nondelinquent tenants must constitutionally be provided with such services as individuals upon proper application and payment for installation of meters." (Emphasis supplied.)

An examination of these cases makes it abundantly clear and indeed it is specifically held in the *Harrison* case, supra, that the right of the public authority to refuse service in the face of delinquent accounts together with the enforcement by way of lien is subject to the proviso that the "county has previously promulgated an ordinance or regulation specifically providing for the action of the county if such a delinquency occurred." *Harrison v. Jones,* supra, p. 344 (1).

Wachovia argues persuasively that the enabling charter legislation does not in the case of College Park grant to the city the authority to refuse service for nonpayment of the usual utility charges. Nor does the legislation exposit the power of the city to collect for utility charges other than to "charge and collect" for the same. On the other hand, the legislation authorizes as to a "sewer system" an assessment for maintenance of and a collection of a charge for the use of the sewer system. The assessment however is equated to the assessments for street improvements and may be enforced by execution, levy and sale and is a proper lien upon the property. We interpret this to mean the initial establishment and the right to the continued maintenance of the system and not its daily use. Also in the case of sanitary services, the city is granted authority to assess, levy and collect sanitary *taxes* in accordance with the

classification of property and the sanitary services rendered. These assessments and taxes likewise are a lien upon property and may be collected by execution, levy and sale. We believe it is clear that the enabling legislation distinguishes the sale of a product (such as water or electricity) where the city enters into a contract with the user and bases the charge upon the amount of the product used from the furnishing of taxpayer services (such as the laying of sewer pipe, sewer pipe repair, water or electrical connection, where the charge is based upon a classification of the premises or the nature of the customer and not dependent upon the amount of the product consumed). This classification of charges based upon the service to the taxpayer as opposed to contractual consumption finds support in the Supreme Court's recognition that Davis v. Weir, supra, mandates constitutionally the furnishing of products (i. e., electricity, water and sewage disposal) to individuals upon proper application irrespective of delinquent utility payments by predecessor occupants, but that *taxes assessed based upon what amounts to the rendering of improvements are chargeable properly against the property improved, collectible by levy and execution. Bowery Savings Bank v. DeKalb County,* supra, p. 530.

In this case, the trial court properly granted summary judgment to Wachovia insofar as it held that the City of College Park had no valid lien against the property of Wachovia for electrical and water service furnished to Wachovia's predecessor-in-title and that there is no constitutional, statutory or charter provisions which authorizes such a lien; further that College Park cannot refuse service (including appropriate sewer system services, i. e., sewage disposal) after Wachovia qualified for such service and made proper application therefor.

We are not so convinced as to the grant of partial summary judgment to the City of College Park. The trial court therein held that College Park was entitled to a lien against Wachovia's property for "sewage system" utilities furnished to Wachovia's predecessor-in-title as well as sanitary services.

We are in agreement with the trial court insofar as the lien attaches for services rendered to taxpayers generally (i. e., sewer pipe assessments, repairs, connections, garbage collection and the like). However, insofar as the order of the trial court may have included sewage disposal which may be based contractually upon the amount of water consumed, we believe that the order would be overly broad. However, we will indulge every presumption of legality in favor of the judgments of the trial court; therefore, we will presume that the court's judgments are supported by every fact essential to make such judgments valid and binding. *Merrill Lynch &c. Inc. v. Echols,* 138

Ga. App. 593, 594 (226 SE2d 742); *Smith v. Byess,* 127 Ga. App. 39 (1) (192 SE2d 552).

Based upon the foregoing, we affirm the partial grant of summary judgment to Wachovia relieving it of any lien for contractual services (water, electrical, and product related sewage and sanitary services) and, as well, affirm the partial grant of summary judgment granting a lien to the City of College Park for sewage system utilities and sanitary services except insofar as that grant may include product-related sanitary and sewage charges.

*Except as limited, judgments in Cases No. 59319 and 59633 affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED MARCH 6, 1980 — DECIDED
JUNE 30, 1980.

*Marion Smith, II, Andrew J. Hinton,* for appellants.
*George E. Glaze, Robert Mark Mahler,* for appellees.