62813. METRO PROPERTIES v. CITY OF DALTON.

SOGNIER, Judge.

Metro Properties (Metro) leased a building which had formerly been leased by Crest Finishers, Inc. (Crest). Metro applied to the Board of Water, Light and Sinking Fund Commissioners (Board) of the City of Dalton (City) for utility service. The City informed Metro that in order for utilities to be furnished at the premises, Metro would have to pay Crest's delinquent bill in the amount of $145,233 and a deposit in the amount of $200,000.

Metro sought a judgment declaring its right to utility service without payment of the past due account of a former tenant and a temporary injunction requiring that the City furnish utility service pending resolution of the dispute. The Superior Court of Whitfield County granted the temporary injunction ordering the City to provide electric and water service to Metro upon payment of a $50,000 deposit. Metro paid the deposit.

Prior to the final hearing on the declaratory judgment Metro

purchased the property, thus changing its status from tenant to owner. Metro had no connection whatever with the prior owner nor with the prior tenant, Crest. The trial court dismissed the injunction and held that the City was within its legal rights to terminate all utility service to Metro's property until such time as Crest's delinquent account had been paid. Metro tendered $145,233 to the City as payment under protest of the delinquent account; the trial court had refused to order the City to continue service pending appeal of the case.

1. The City filed a motion to dismiss the appeal on the ground that the questions raised on appeal are moot because Metro has paid the past due amount and utility service has been restored to the premises. Appellant has answered the motion to dismiss by submitting an affidavit and copy of its check indicating that the money was paid under protest pending a determination of the issues on appeal. "When the evidence offered in support of a motion to dismiss is controverted in any way by the opposite party, then an appeal will not be dismissed on the grounds of mootness. [Cits.]" *Ward v. Sebren,* 146 Ga. App. 867, 869 (247 SE2d 532) (1978). Hence, the motion to dismiss the appeal is denied.

2. Appellant contends that the trial court erred by ruling that the City was within its legal rights to terminate all utility service to Metro at the premises in question until the past due account of the former tenant was paid. The trial court cited as authority for its ruling the statute creating the Board (Ga. L. 1913, p. 766), and the City's ordinance and regulations regarding the management and control of utilities.

The statute upon which the City relies is as follows:

" 'The Board of Water, Light and Sinking Fund Commissioners of said city shall, from the 1st day of September, 1913, have entire control of the public utilities of the City of Dalton, and on said date the Clerk of the City of Dalton shall turn over to said Board all books, accounts and papers of whatever kind affecting public utilities. Said board shall have authority to make all contracts necessary for the operation of said utilities; to buy all supplies and material needed, and to make all necessary improvements and extensions, to employ all clerical and other help necessary in the operation of said utilities; to make all rates, rules and regulations for furnishing water and lights to the inhabitants of said city and to enforce the same; and to deal in every way with said utilities as a separate and distinct part of the city government. Said Board shall fix rates sufficiently high so as to bring in sufficient revenue to maintain said public utilities and to provide for needed repairs, extensions and improvements. Said Board shall collect all moneys due to said utilities and shall pay all debts. No

contract made by said Board shall bind said city but shall be binding upon the department of public utilities, which is hereby created, of which said Board shall be the head, to the extent of the revenues derived from the operation of said utilities. No moneys shall be appropriated by the Mayor and Council of said city to the operation and improvement of said utilities, except that the Board shall receive the principal and interest on the public debt as now provided by law.' " (Ga. L. 1913, pp. 767, 768).

Section 23-2 of the 1965 Code of the City of Dalton provides:

" 'The Board of Water, Light & Sinking Fund Commissioners of said City, having control by statute of the public utilities thereof, are authorized to make and enforce any rule or regulation that may be necessary for the proper management thereof; to prohibit any interference therewith, to make rules providing for the cutting off of gas, water or electricity from any property until any unpaid bill therefor due by the owner or tenant of said property shall be paid, to fix a charge for turning on such water, gas, or electricity where the same has been cut off; prohibit any person or persons from turning on the same without authority from said Board; and to establish any other reasonable rule or regulation touching the management and control of said utilities.' "

Pursuant to the statute and ordinance, the Board adopted certain rules and regulations as to the operation of utilities in the City, including the following rules:

"(5) In the event of delinquency in the payment of any bill for services rendered to or at premises occupied by the customer, and the removal of the customer from such premises without payment of such delinquency, the Board shall have the right to discontinue service of any utility at such premises to the succeeding occupant thereof until such delinquency shall have been paid, and shall have the right to refuse to recommence service at such premises until such delinquency shall have been paid, if service shall have been dischontinued [sic] at such premises prior to the occupancy thereof by the succeeding occupant."

"(8) The Board shall have the right to refuse to initiate, continue, or recommence service of any utility to a customer or at premises of a customer until and unless all delinquent charges or 'arrears' for any services previously rendered and all charges incurred as incident to such services to the customer or at the premises of the customer, together with the charge for recommencement of service if service has been discontinued, shall have been paid in full."

"(9) The Board shall have the right to refuse to initiate, continue, or recommence service of any utility to a customer or at the premises of a customer until and unless the customer shall agree to

accept and shall contract to receive at established rates and under the rules and regulations of the Board, all utility services of the City available to the customer at the premises of the customer."

Appellee contends that the statute, ordinance and rules create a lien on appellant's property for the unpaid utility charges, and that the City may discontinue or refuse to recommence utility service pursuant to said statute, ordinance and rules.

In *Pease v. City of College Park,* 155 Ga. App. 120 (270 SE2d 329) (1980), this court was faced with a fact situation similar to that which is presented in the instant case. In *Pease,* Judge Birdsong discussed those cases upon which appellee relies in the instant case; namely, *City of Atlanta v. Burton,* 90 Ga. 486 (16 SE 214) (1892); *Dodd v. City of Atlanta,* 154 Ga. 33 (113 SE 166) (1922); *Harrison v. Jones,* 226 Ga. 344 (175 SE2d 26) (1970); and *Bowery Savings Bank v. DeKalb County,* 240 Ga. 528 (242 SE2d 50) (1978). In each case cited a valid lien for the delinquent utility charges was created by the ordinance in question. "An examination of these cases make it abundantly clear and indeed it is specifically held in the *Harrison* case, supra, that the right of the public authority to refuse service in the face of delinquent accounts *together with the enforcement by way of lien* is subject to the proviso that the 'county has previously promulgated an ordinance or regulation specifically providing for the action of the county if such a delinquency occurred.' *Harrison v. Jones,* supra, p. 344 (1)." *Pease v. City of College Park,* supra, p. 124. (Emphasis supplied.)

Similarly, the Fifth Circuit Court of Appeals in Chatham v. Jackson, 613 F2d 73 (1980), relying on *Bowery Savings Bank v. DeKalb County,* has upheld the termination of utility service to an owner of property because of the failure of the owner's tenant to pay the utility bill. In Chatham, the court found a valid lien had been *expressly* created by ordinance and was enforceable against the property owner.

Liens are statutory remedies created in derogation of the common law and are strictly construed. *Wooten v. Ford,* 46 Ga. App. 50 (166 SE 449) (1932). As in *Pease,* we believe that the legislation here contemplates the sale of a product (such as water or electricity), and that the city may enter into a contract with a user and base charges upon the amount of the product used. *Pease v. City of College Park,* supra, p. 125. In this case, as in *Pease,* no valid lien was expressly created by the statute, ordinance or rules. Thus, the trial court erred in ordering that the City was within its legal rights to terminate all utility service to Metro's property until the delinquent account of Crest at that location had been paid.

3. In view of our holding in Division 2, it is not necessary to

discuss appellant's other enumerations of error.

*Judgment reversed. Shulman, P. J., and Birdsong, J., concur.*

DECIDED MARCH 4, 1982 —
REHEARING DENIED MARCH 18, 1982 — 

*Erwin Mitchell, James H. Bisson III, Pat Hannah,* for appellant.
*Carlton C. McCamy, Daniel T. Strain, W. R. Seaton,* for appellee.