## A97A1714. MONTICELLO, LTD. v. CITY OF ATLANTA.

(499 SE2d 157)

SMITH, Judge.

This appeal presents the issue of whether the City of Atlanta has the authority under its charter to impose solid waste disposal fees upon unoccupied and uninhabitable apartment units owned by appellant Monticello, Ltd. On cross-motions for summary judgment, the trial court granted the city's motion and denied that of the property owner, requiring the owner to pay the fees. The trial court based its grant of summary judgment on the language of the city charter, finding that it authorized the city to assess fees for waste disposal services under these circumstances. The trial court also found that the property owner failed to exhaust its administrative remedies. We disagree and reverse.

Monticello owns an apartment complex located at 3670 Martin Luther King, Jr. Drive ("the property"). The property has 224 units, but 134 of those units are uninhabitable and have not been occupied since 1990. Since 1990, the City of Atlanta has assessed a fee against the property for each of the 224 units for the removal and disposal of solid waste or trash from the units. Because 134 of the 224 units have been unoccupied since 1990, no solid waste or trash was attributable to these units.

Monticello alleges that it was unable to pay these fees and that, in consequence, the city placed fi. fas. or tax liens on the property, making Monticello unable to secure the financing necessary to renovate the unoccupied units and causing Monticello to suffer lost income and profits.

Monticello filed an action in the trial court seeking a declaration that the city was and continues to be without authority to charge waste disposal fees on a per unit basis against the unoccupied units and that the previous assessments were unlawful and void. It sought to have the liens, fi. fas., or tax executions removed from the property's title and also sought damages, alleging an unconstitutional taking and slander of title.

1. Monticello argues that the city has no authority to assess the fees at issue on a per unit basis against unoccupied and uninhabitable units because no actual service is rendered in exchange for the fees assessed. The city contends that it is authorized to assess the fees against a property owner for unoccupied and uninhabitable apartment units under the applicable city charter provisions, that Monticello is not exempt from paying the fees under these statutes, and that Monticello has received and continues to receive a benefit from the mere availability of these collection services.

The 1996 Atlanta City Charter § 6-101 (f)[1] authorizes the assessment of taxes against all lots and lot owners for sanitary purposes regardless of whether the lots are vacant or in use; the amount of such taxes is determined by the total property frontage abutting the public street. Atlanta City Charter § 6-101 (g)[2] provides for the assessment of fees for the collection, removal, or disposal of solid waste; such fees are to be charged against the owners, or if not owner-occupied, against the occupants of the premises from which the fee is collected and the waste is removed.

The interpretation of statutes, ordinances, and charters presents a question of law for the court. *Curlee v. Mock Enterprises*, 173 Ga. App. 594, 600 (327 SE2d 736) (1985). In considering the relevant sections of the city's charter, we must apply the rules of statutory construction. It is axiomatic that in interpreting a plain and unambiguous enactment we must give its words their plain and ordinary meaning, except for words which are terms of art or have a particular meaning in a specific context. OCGA § 1-3-1 (b). We must seek "to give meaning to each part of the statute and to avoid constructions which render a portion of the statute mere surplusage. [Cits.]" *Moritz v. Orkin Exterminating Co.*, 215 Ga. App. 255, 256 (450 SE2d 233) (1994). " '[A] statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes "in pari materia," are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto.' [Cit.]" *Bennett v.*

---

[1] The 1996 version of § 6-101 (f) provides: "The governing body shall be authorized to assess, levy, and impose taxes on lots and lot owners for sanitary purposes in such amount, rates, or methods of assessment and taxation; provided, further, the governing body shall be authorized and empowered to collect such taxes by execution against the lot so assessed and the owner thereof and provide for the use of such proceeds. The amount so assessed shall be a lien on the lot from the date of the assessment. The governing body shall be authorized to prescribe what should constitute a lot for sanitary purposes and assessment; provided, however, that assessment shall be made on vacant lots as follows: A front footage fee shall be assessed in accordance with the zoned property category, residential, apartment, or commercial, and no unit fee shall be assessed. Resident lots shall not be subdivided or assessed separately except where they have two or more houses used or intended for use as separate tenements built upon them, in which case a sanitary assessment may be levied against the lot for each house situated thereon." Ga. L. 1996, p. 4531, § 6-101 (f). The previous charter contains in large part the same language. Ga. L. 1973, p. 2232, § 6-101 (f).

[2] Atlanta City Charter § 6-101 (g) provides: "The governing body of the city, in addition to being authorized to assess, levy, and impose taxes for sanitary purposes, as set forth hereinabove in subsection (f), shall be authorized to charge fees for the collection, removal or disposal, or both, of all solid waste except body wastes, ashes, street cleanings, dead animals, abandoned automobiles, and market and industrial wastes, such fees to be charged against the owners or, when not owner occupied, against the occupants, tenants, or lessees of the premises from which the fee is collected, and from which such waste is removed or disposed of, or both, from which collection and removal services are made available." Ga. L. 1996, p. 4531, § 6-101 (g). See also Ga. L. 1973, pp. 2232-2233, § 6-101 (g).

*Wood*, 188 Ga. App. 630, 632 (1) (373 SE2d 645) (1988). Indeed, "[i]t is a basic rule of construction that a statute or constitutional provision should be construed to make all its parts harmonize and to give a sensible and intelligent effect to each part, as it is not presumed that the legislature intended that any part would be without meaning." (Citation and punctuation omitted.) *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476) (1994).

Any proposed construction, however, "must not result in unreasonable consequences and must square with common sense and sound reasoning. [Cit.]" *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 593 (2) (b) (436 SE2d 219) (1993). Finally, a specific statute prevails over a more general statute when they are in conflict. Id. at 592 (2). See also *JCS Enterprises v. Vanliner Ins.*, 227 Ga. App. 371, 373 (3) (489 SE2d 95) (1997).

Under OCGA § 36-35-3 (a), municipal corporations have the power to adopt only "clearly reasonable ordinances, resolutions, or regulations . . . for which no provision has been made by general law and which are not inconsistent with the Constitution or any charter provision applicable thereto." Municipal ordinances inconsistent with a city's charter are invalid. *Ga. Branch Assoc. Gen. Contractors &c. v. City of Atlanta*, 253 Ga. 397, 398-399 (2) (321 SE2d 325) (1984); *City of Buchanan v. Pope*, 222 Ga. App. 716, 718-719 (1) (b) (476 SE2d 53) (1996). A grant of power to a municipal corporation must be strictly construed, and any reasonable doubt concerning the existence of a power is resolved by the courts against the municipal corporation. *Kirkland v. Johnson*, 209 Ga. 824, 825-826 (3) (76 SE2d 396) (1953). "[A]ll municipal charters are strictly construed, and . . . powers which are not expressly, or by necessary implication, conferred upon the corporation can not be exercised by it. [Cits.]" *City of Macon v. Walker*, 204 Ga. 810, 812 (2) (51 SE2d 633) (1949); *Ga. R. &c. Co. v. R. Comm. of Ga.*, 149 Ga. 1, 12 (98 SE 696) (1919). Moreover, any discretion left to the municipal corporation must be exercised in good faith. *Kirkland*, supra at 825 (3).

Section 6-101 (f) of the Atlanta City Charter authorizes the city "to assess, levy, and impose taxes on lots and lot owners for sanitary purposes in such amount, rates, or methods of assessment and taxation," while § 6-101 (g) specifically authorizes the city "to charge fees for the collection, removal or disposal, or both, of all solid waste," "in addition" to the taxes imposed under § 6-101 (f). Construing these charter provisions together, it is clear that § 6-101 (f) governs the assessment of taxes, while § 6-101 (g) governs the charging of fees. Both sections address sanitation issues, but § 6-101 (g) is directly applicable here because it addresses more specifically the ability of the city to charge fees for the collection, removal, and disposal of solid waste, while § 6-101 (f) addresses the ability of the city to tax

for sanitary purposes generally. *Brady*, supra (specific statute governs over more general statute when in conflict).

Additionally, beyond the plain language of the charter, it is clear that in Georgia an assessment for garbage collection services is a fee and not a tax. *Levetan v. Lanier Worldwide*, 265 Ga. 323, 324 (2) (454 SE2d 504) (1995) (sanitation assessments for garbage collection and disposal are not taxes but are services for which a fee is charged); *Crestlawn Mem. Park v. City of Atlanta*, 235 Ga. 194, 195 (2) (219 SE2d 122) (1975) (assessment for removal of trash and refuse from streets abutting cemetery is not a tax);[3] *Mayor of Milledgeville v. Green*, 221 Ga. 498, 501 (145 SE2d 507) (1965) (charges for removing and disposing of garbage are fee for special services). "A tax is an enforced contribution exacted pursuant to legislative authority for the purpose of raising revenue to be used for public or governmental purposes, and not as payment for a special privilege or a service rendered. [Cits.]" *Gunby v. Yates*, 214 Ga. 17, 19 (102 SE2d 548) (1958).

A charge for the collection of solid waste cannot be both a tax and a fee, and the plain language of § 6-101 (g) designates this as a fee for a service. The language in § 6-101 (f) allowing the city's governing body "to prescribe what should constitute a lot for sanitary purposes and assessment" and allowing assessments to be made on vacant lots for tax purposes therefore does not apply to the assessment of fees for the collection of solid waste. The city asserts correctly that § 6-101 (d) gives it unlimited discretion to designate the taxes and fees it may assess. But an assessment of a fee for refuse collection against a vacant and uninhabitable apartment cannot be reconciled with the language of § 6-101 (g), which states that the fees are "to be charged against the owners or, when not owner-occupied, against the occupants, tenants, or lessees of the premises from which the fee is collected, *and* from which such waste is removed." (Emphasis supplied.)

Applying the general principles of statutory construction, we find that § 6-101 (g) contemplates assessment of a fee only against *occupied* premises for the removal of waste generated by the *occupants*, whether owners or tenants. The payment of the fee and the removal of waste are expressed in conjunctive rather than disjunc-

---

[3] The provisions of the Atlanta City Charter construed by the Supreme Court in *Crestlawn* are almost identical to the provisions before us today. In *Crestlawn*, the ordinances of the city included " 'a sanitary service charge for sanitary purposes' " that was levied against "all privately owned properties located in the city and the amount of the charges was based upon the total property frontage which abutted the public streets of the city." *Crestlawn*, supra at 194 (1). The city was also empowered by its charter "to levy and collect assessments for the collection, removal and disposition of garbage, trash, refuse and rubbish in addition to making assessments for sanitary purposes." Id. Construing these provisions, the Supreme Court held that sanitary service charges assessed by the city were fees in exchange for which actual services were provided. Id. at 195 (2).

tive language, thus requiring that waste be actually removed from the premises in question. See *Hill v. Nationwide Mut. Fire Ins. Co.*, 214 Ga. App. 715, 717 (448 SE2d 747) (1994). The charter states two alternatives for the collection of solid waste generated on premises: when the premises are owner-occupied, or when they are occupied by others. The charter makes no explicit provision for assessment of a fee against unoccupied and uninhabitable premises that do not generate solid waste, and under the "venerable principle of statutory construction . . . expressum facit cessare tacitum," it is presumed that the enumeration of these conditions excludes others not enumerated. *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (456 SE2d 642) (1995).

This result is also consistent with the general rule that a municipality cannot impose a fee for services that have not been provided. An assessment levied in excess of the benefit provided arbitrarily deprives a person of his property. *Mayor &c. of Savannah v. Knight*, 172 Ga. 371, 374-375 (157 SE 309) (1931); *City of Atlanta v. Hamlein*, 96 Ga. 381, 383 (1) (23 SE 408) (1895). See also *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152, 154 (3) (464 SE2d 808) (1996) (assessment of fire service fees by the State Park Authority cannot "substantially exceed the cost of the services").

The city contends that Monticello receives a benefit from the mere availability of solid waste disposal service. The city argues that the continued availability of immediate refuse collection service is an advantage provided to Monticello by the city that warrants a continued assessment of fees against the presently uninhabitable apartments because of the possibility that these apartments might be renovated and occupied at some time in the future. In support of this proposition, it cites OCGA § 36-82-62 (a) (3), a revenue bond enabling statute granting authority to governmental bodies to collect fees, tolls, or charges for services "furnished or made available." The city argues that the language "or made available" allows them to charge for the "availability" of refuse collection service, even without a tangible benefit to Monticello.

This Code section, however, is a general legislative grant of power allowing the city to prescribe fees; it anticipates the enactment of appropriate city charter provisions, resolutions, and ordinances. "A statute giving *authority* to a city to enact legislation in certain areas cannot itself supersede inconsistent provisions in the city's existing charter, nor does it authorize the city to enact legislation that is in conflict with the existing charter. The statute merely grants to cities the authority to enact legislation in certain areas." *City of Buchanan v. Pope*, supra at 720-721 (2). This general enabling statute cannot be construed to allow the collection of fees not authorized by the city's own charter provisions specifically tailored to the collection and dis-

posal of solid waste.

The city also cites *City of Atlanta v. Johnson*, 191 Ga. 100 (11 SE2d 656) (1940), for the same proposition — that the availability of services alone is sufficient to support the assessment of fees against Monticello's property. In *Johnson*, the Supreme Court held valid a sewer construction assessment against a property owner for the cost of lowering a sewer on her street, even though she alleged that the sewer as previously sited was adequate for her property, and the sewer improvements were made solely for the benefit of neighboring property at a lower elevation. The Court held that "the fact that the abutting property may not in its present condition be specially benefited by the construction of the sewer would not render the assessment illegal." Id. at 102.

*Johnson* is inapposite here. It involves not the provision of a service but an assessment for construction of a public improvement to realty. Assessments for public improvement purposes are governed by a distinct body of statutory and case law as well as by a separate provision of the city's charter. See generally *West v. Stynchcombe*, 253 Ga. 135 (317 SE2d 541) (1984); compare Atlanta City Charter, Appendix 1, Powers, § 3 (fees, charges, and tolls for sewer, water, and refuse collection services) with § 9 (assessing the cost of public utilities proportionally against abutting properties). Construction of a permanent public improvement benefits abutting properties, and the cost is distributed among them as an assessment, not a fee for services. "[S]ewer connections, underground repairs, sewer pipes brought into a community, storm drains (as are electrical wires and poles) are one-time costs normally borne by assessments and taxes against the adjacent property." *Pease v. City of College Park*, 155 Ga. App. 120, 122 (270 SE2d 329) (1980). In contrast, the collection, removal, and disposal of solid waste are services, not permanent improvements, and must provide a recognizable benefit to the payer of the fee for such services. The city cannot impose a fee without a corresponding benefit by asserting that the mere existence of a collection service provides to all its citizens an inchoate opportunity to take advantage of the service at some future date.

In summary, a plain reading of the Atlanta City Charter, in light of general principles of statutory construction and existing case law, leads us to the conclusion that the city is not authorized under § 6-101 (g) of its charter to assess fees for the collection, removal, or disposal of solid wastes against a property owner for individual apartment units which are neither occupied nor habitable.[4]

---

[4] We note that the record is unclear regarding the allocation of Monticello's bill between assessments and fees under subsections (f) and (g) of the city's charter. According to a city official, these charges have three components, two of which are calculated on the basis of

2. Although the trial court granted the city's motion for summary judgment on the basis that the fees were properly assessed, it also ruled that Monticello failed to employ an available administrative procedure for abatement or adjustment of the solid waste disposal fees.[5] It is true that a claim challenging the enforcement or application of a rule to a party's property generally is appropriate only after available administrative remedies have been exhausted. See generally *Village Centers v. DeKalb County*, 248 Ga. 177, 178-179 (2) (281 SE2d 522) (1981) (application to local authorities for rezoning prerequisite to declaratory judgment action). But if the interested parties are not afforded an opportunity to protect their rights, the governmental entity cannot claim that they have failed to exhaust administrative remedies. *City of Waycross v. Reid Rental Co.*, 186 Ga. App. 452, 454 (367 SE2d 305) (1988) (failure to give notice of assessment). We find that the trial court erred in its holding because a genuine issue of material fact remains regarding whether an administrative remedy was available to Monticello.

The city states that a remedy for incorrect sanitary service charges has been available through the city's Department of Housing & Community Development since at least 1990, but that Monticello failed to seek a partial abatement of these fees through the available departmental procedures. According to the affidavit of a city employee, once a party provides proof that a housing inspector has designated certain apartments in a housing complex untenantable or uninhabitable, the Department of Public Works recalculates the sanitation unit cost and credits that amount as an adjustment to the sanitary service charge. The city argues that Monticello chose not to exhaust its administrative remedies before petitioning the trial court for relief because the procedures did not authorize a full abatement of the charges levied against the uninhabitable apartments.[6]

Monticello argues that this alleged procedure is neither codified and published nor set forth in a municipal handbook or regulation. The record contains no publication of such a procedure in any form. Additionally, Monticello states that its personnel had no actual knowledge of such a procedure and contends that the "purported administrative remedy is a sham." We conclude from the record

---

frontage and one on the number of units. But the record reveals only an undifferentiated statement to Monticello for "san serv chg."

[5] The city's contention that this issue was not ruled on below is without merit. The trial court clearly held that "plaintiff has had ample opportunity to seek an exemption from the fees assessed since 1990" and relied at least in part on that holding to conclude that the assessments were proper and plaintiff's failure to pay warranted imposition of liens, fi. fas. or tax executions.

[6] But note that the city apparently has failed to allocate or differentiate these charges. See n. 4, supra.

before us that a disputed issue of fact remains as to the existence of the abatement procedure and Monticello's knowledge of it.

The city has failed to show that its rule regarding the procedure for obtaining an abatement of the sanitation fee for uninhabitable apartments is either codified or published; the city alleges, however, that an owner or operator of apartment complexes who presents a letter from the Bureau of Housing declaring apartment units unfit for habitation will be given an adjustment. But if it could not discover the availability of such a remedy, Monticello would have been unable to exhaust administrative remedies before resorting to the judicial process. See *Hunnicutt v. Ga. Power Co.*, 168 Ga. App. 525, 526 (1) (309 SE2d 862) (1983) ("The mere existence of an unexhausted administrative remedy does not, standing alone, afford a defendant an absolute defense to the institution of a legal action"); *Fulton-DeKalb Hosp. Auth. v. Metzger*, 203 Ga. App. 595, 597 (4) (417 SE2d 163) (1992) (since authority's actions prevented aggrieved person from seeking administrative review, and rules provided no alternative means of review, authority could not assert exhaustion of administrative remedies).

The city argues that Monticello knew of this remedy.[7] A city employee, Christine Williams, initially testified by affidavit that she searched the property file and "did not locate any communication relating to a request for an adjustment." After Monticello produced an affidavit with attached correspondence that its employee testified was mailed, faxed, and hand-delivered to Williams, the city filed a second affidavit from Williams testifying that she orally informed Monticello's agent of the appropriate procedure by which it could obtain this abatement. Monticello counters that its requests for relief "were completely ignored" by the city and that it was never informed of this procedure, either orally or in writing. Jed W. Lyles identified himself as the person who hand-delivered Monticello's letter to Williams; he denied that he received any response. This direct contradiction presents a disputed issue of fact.

To prevail on summary judgment on this ground, the city was required to demonstrate that no genuine issue of material fact existed and that it was entitled to summary judgment as a matter of law. *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996); OCGA § 9-11-56 (c). Here, summary judgment was not appropriate because the city has not shown any codification and publication of

---

[7] We assume without deciding that actual knowledge of an administrative remedy requires that an aggrieved person exhaust that remedy even in the absence of proper publication. But we find no direct authority for such a rule outside the rulemaking requirement of the Georgia Administrative Procedure Act, OCGA § 50-13-3 (b), which is not applicable here. OCGA § 50-13-2 (1).

the proper procedure for seeking an abatement of sanitary service fees, and it has not demonstrated that Monticello knew of an available, applicable remedy. Testimony in an affidavit from the city's employee that she verbally instructed Monticello's agent regarding the abatement procedure, without more, cannot sustain a grant of summary judgment when it is directly contradicted by the testimony of Monticello's agent that no such instruction was given. In the absence of any ordinance, regulation, handbook, or other writing setting forth the policy described by the employee's affidavit, this conflicting testimony forecloses the grant of summary judgment on this issue as well.

*Judgment reversed. McMurray, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur fully in Division 1 and for that reason depart from the majority's analysis of the issue presented in Division 2. I concur in the judgment, as the trial court erred in denying plaintiff Monticello, Ltd.'s motion for summary judgment and granting that of the City of Atlanta. In accordance with the law as explained in Division 1, Monticello was entitled to summary judgment.

There is no reason to examine whether Monticello knew or should have known of the purported administrative remedy or whether it was properly promulgated. It does not matter because, construing the evidence most favorably to the City, downward adjustment of the solid waste disposal fees could be made only upon presentation of "a letter signed and dated by an Inspector in the Bureau of Housing [stating] that a portion (an apartment unit or units) of said property has been declared unfit for habitation." According to the City's evidence, it is only units which are officially declared uninhabitable which can qualify for exemption from the fees.

In its amended complaint Monticello sought judicial relief not only because the units were "not rentable nor habitable" but also because it did not occupy the property. It asserted that the city charter provision which imposed these fees applied only to occupants, tenants or lessees when the property was not owner-occupied. Monticello contended that the fee was for use of the service, and that since it did not occupy the units and thus did not use or benefit from the sanitation service, the law did not apply.

As the majority opinion holds in Division 1, Monticello is correct. Consequently, the administrative remedy which the City offers by way of its proof would be insufficient on its face. It would impose the fee on these units, and all others, even when they were habitable but unoccupied, unrented, or unleased. For this reason, plaintiff Monti-

cello was entitled to summary judgment on this point, i.e., exhaustion of administrative remedies, as well.

DECIDED MARCH 20, 1998 

*Brenskelle & Perry, David P. Brenskelle, Brock E. Perry*, for appellant.
*Clifford E. Hardwick IV, Bernard R. Thomas, Sr., Lemuel H. Ward*, for appellee.