**In re LARTER N.V., Debtors.**

**Bankruptcy No. 84–01698–BKC–TCB.**

United States Bankruptcy Court,
S.D. Florida.

May 1, 1985.

Howard Berlin, Miami, Fla., for HMS.

Louis Jepeway, Walter Kovner, Miami, Fla.,, for Hochberg.

Arthur Weitzner, Miami, Fla., for Alters.

Patricia Redmond, Miami, Fla., for Israel.

Jerry Markowitz, Miami, Fla., for Debtor.

Patricia Silver, Miami Beach, Fla., for Molko, Trustee.

Norman Frank, Harvey Ziegler, Polk City, Fla., for Segal, State Court Receiver.

ORDER DENYING USE OF FIRE INSURANCE PROCEEDS TO FUND CREDITORS' PLAN OF REORGANIZATION, ORDER DENYING CONFIRMATION AND DISMISSING CASE

THOMAS C. BRITTON, Bankruptcy Judge.

In September 1984 this debtor filed for bankruptcy relief under chapter 11. Four months later, a plan for reorganization was

filed by several creditors through a corporation, HMS Realty Group, Inc. (C.P. No. 39). That plan has been twice amended. (C.P. Nos. 47, 72). A confirmation hearing was held on March 26. The issues presented at that hearing are presently under advisement. A pivotal issue is whether the debtor may use certain fire insurance proceeds to fund the HMS plan which is before the court. The purpose of this order is to resolve that issue.

In 1981 the debtor acquired the Sea Isle Hotel, a 250-room Miami Beach oceanfront hotel, together with Sea Isle West, a 102-room hotel addition on the west side of Collins Avenue across from the main hotel. In January 1984 the main building was substantially damaged by fire and in March 1984 the insurance carrier paid to the debtor and its mortgagees $749,000 for fire damage to the main building. The insurer also paid $317,933 for business interruption damage. All the payees endorsed the fire insurance proceeds to a law firm as escrow agent with the understanding that the proceeds would be applied in accordance with the insurance contract and the mortgage agreements.

A foreclosure action was commenced, following the debtor's default, and a receiver was appointed in June 1984 by the State court. The insurance proceeds were turned over to the State court receiver who with the consent of all parties has been permitted to continue as custodian and operator of the debtor's hotel properties. The main building has never been repaired or replaced and remains closed.

On April 9, 1985, upon the motion of the plan proponent, the State court receiver was ordered to turn over $1 million to the attorney for HMS as the proposed disbursing agent under the plan presently before the court. That order provided that he:

"shall deposit said funds in an interest bearing account and hold such funds in trust. No portion of said funds shall be further transferred or disbursed until such time as this court enters an order directing said transfer or disbursement." (C.P. No. 113).

That order has been complied with. All or essentially all of the funds in question are fire insurance proceeds.

Steinberg, et al., the first mortgagees who are owed over $1.2 million, have rejected the plan and have, inter alia, opposed the use of the insurance proceeds to fund that plan. (C.P. No. 114). Alters, the debtor's second mortgagee whose security interest includes only the Sea Isle West property, has also rejected the plan and has supported the Steinberg objection to the use of the insurance proceeds. (C.P. No. 115).

HMS, the plan proponent, has defended its contention that the funds are available to fund its plan. (C.P. No. 118). The foregoing memoranda have been submitted by the parties pursuant to this court's order of April 11 (C.P. No. 116), in order that this issue may be resolved without delay.

The duly perfected first mortgage of Steinberg provides in pertinent part that the debtor is obligated:

"To keep the buildings now or hereafter on said land and the fixtures and personal property therein contained insured, in a company or companies approved by the mortgagee, against loss by fire and windstorm, for the highest insurable value so that the mortgagee's interest is not subject to co-insurance, *and the policy or policies shall be held by and be payable to said mortgagee*, and the mortgagee shall have the option to receive and apply said payment on account of the indebtedness hereby secured, or permit the mortgagor to receive or use it, or any part thereof, for any purposes without thereby waiving or impairing the equity, lien or right under and by virtue of this mortgage and may place and pay for such insurance or any part thereof without waiving or affecting the option to foreclose or any right hereunder, and each such payment shall bear interest from date at the rate of 10 percent per annum."

The insurance policy was endorsed to reflect that Steinberg, et al., are the loss

payees and the payment of those proceeds was made in accordance with both contractual provisions. Nothing that has occurred since constitutes a waiver, abandonment or assignment of the first mortgagee's paramount claim to the insurance proceeds, which remain constructively within the possession and control of the first mortgagee.

In *Sea Isle Operating Corporation v. Hochberg*, 198 So.2d 336, 337 (Fla.Dist.Ct. App.1967) in an action between the debtor's predecessor entity and the present first mortgagee, the court held with respect to insurance proceeds from previous hurricane damage, that the mortgagee was entitled to those proceeds as against the mortgagor. The court said:

> "The right to receive the insurance proceeds was fixed at the time of the loss, and subsequent foreclosure proceedings could not have extinguished this right unless the debt evidenced by the note and mortgage was discharged in full."

The pertinent provision in the mortgage which was found to be controlling in that action is the identical provision quoted above. The holding in that case, which collaterally estops the debtor and all parties claiming through and under the debtor, including HMS, has been followed in this State. *Lutheran Brotherhood v. Hooten*, 237 So.2d 23, 24 (Fla.Dist.Ct.App.1970); 37 Fla.Jur.2d, Mortgages and Deeds of Trust, § 186. There, the court said:

> "Lutheran Brotherhood's right to recover *under the policy of insurance* became fixed at the time of loss.... This right could not be lost until the entire debt was satisfied in full."

The HMS plan proposes to pay the first mortgagee from these insurance proceeds the installments which it has failed to make on its mortgage since it defaulted and it proposes to continue making those installments, seeking to invoke this court's jurisdiction to permit reinstatement of that mortgage which was in foreclosure in the State court. It proposes to use the bulk of the insurance proceeds to commence payments to the other nine classes of creditors provided for under its plan. It does not propose to repair or replace the Sea Isle Hotel with any part of the proceeds. It is estimated that it would currently cost about $1 million to restore the damage sustained by the Sea Isle Hotel resulting from the January 1984 fire. A subsequent fire further damaged the premises in December 1984. The State court receiver has filed an additional insurance claim of $200,000 for that damage. That claim remains unresolved and, of course, that damage has not been cured.

HMS relies on the bankruptcy strong-arm clause, 11 U.S.C. § 544(a), permits the debtor to:

> "avoid ... any obligation incurred by the debtor that is voidable by ... a bona fide purchaser of real property from the debtor ... that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists."

■ The strong-arm clause gives a bankruptcy trustee the foregoing right to avoid those liens which under State law would be voidable by a bona fide purchaser without notice or a judgment creditor who perfects its claim as of the date of bankruptcy. Section 1107(a) gives a chapter 11 debtor the powers of a trustee. It is the argument of HMS that a judgment creditor against or a bona fide purchaser from the debtor in September 1984 would have acquired title to the insurance proceeds then held by the State court receiver, free of any right or claim of the first mortgagee, unless the first mortgagee had filed a financing statement with the Secretary of State. I disagree.

■ It is clear to me from the cases cited above, that under Florida law the possession of the insurance proceeds by the State court receiver was notice to the world that those proceeds were subject to the control of that court and the claims of the parties. The State court receiver has at all times acknowledged, as did his predecessor the escrow agent, the first mortgagee's right to receive the insurance proceeds, a right

which could only have been extinguished by payment in full of that mortgage.

■ The foregoing conclusion is, of course, fatal to the HMS plan. The plan cannot be funded without the use of this mortgagee's money and this mortgagee refuses to consent to that use. Confirmation is denied, therefore, under § 1129(a)(11) without consideration of any other infirmity of the plan.

Pursuant to the notice and hearing previously had, and upon the motion of the dissenting creditors, I find that this plan cannot be effectuated and that no purpose would be served by granting the sponsoring creditor additional time to file another plan or a further modification of the present plan. This case is, therefore, dismissed under § 1112(b)(2) and (5). Dismissal is with prejudice to the filing of any bankruptcy case by this debtor earlier than one year after this order becomes final.

Dismissal of this case restores the unimpaired jurisdiction of the State court. By a previous order, the bankruptcy automatic stay had been lifted to permit that foreclosure proceeding to continue during the pendency of this case. Howard Berlin, the attorney for HMS, is ordered forthwith to turn over to the State court receiver the $1 million recently received by him together with all interest earned upon such sum since it came into his hands.