A97A0865. JCS ENTERPRISES, INC. v. VANLINER INSURANCE.
(489 SE2d 95)

JOHNSON, Judge.

In this case of first impression in Georgia, we are called upon to determine the rights of a secured creditor in insurance benefits payable from a third-party tortfeasor's insurer upon the destruction of the collateral.

On August 21, 1995, JCS Enterprises sold a truck to Vicki and Jesse East. The Easts made a $1,000 down payment, and JCS financed the balance of $22,100 in a contract under which JCS

---

retained a security interest in the truck. The next day JCS perfected its security interest under OCGA § 40-3-50 (b) by delivering to the Motor Vehicle Division of the Georgia Department of Revenue the previous title certificate and an application for a new title certificate, showing JCS as lienholder.

On September 7, 1995, the Easts' truck was severely damaged in a collision with a truck owned by Otto Nelson & Sons, Inc. Nelson's insurance carrier was Vanliner Insurance. Vanliner declared the Easts' truck a total loss, and paid the Easts $26,245 as compensation for loss of the truck, loss of income, and rental expenses. Apparently $22,995 of this payment represented the truck's value. The Easts never paid any of the $22,100 loan balance to JCS.

JCS sued Vanliner for conversion, contending it should have sent the portion of the insurance payment attributable to the truck to JCS, not to the Easts. Both parties moved for summary judgment. Vanliner argued it had no obligation to pay JCS instead of the Easts because it did not have actual notice of JCS's security interest, and because the security interest did not extend to the insurance payment until it was received by the Easts. JCS asserted its security interest covered the insurance payment while it was still in Vanliner's hands; that Vanliner had actual notice of the security interest; and that the lienholder notation on the title was constructive notice. The trial court granted Vanliner's motion and made no explicit ruling on JCS's motion. JCS appeals. For reasons explained below, we reverse.

1. Before we address the narrower issues presented by this case, we must review Georgia conversion law as it applies to secured parties. An exercise of "dominion or control" over secured property which is "inconsistent with" the rights of the secured party is conversion. *Trust Co. of Columbus v. Associated Grocers Co-Op*, 152 Ga. App. 701, 702 (2) (263 SE2d 676) (1979); see *Privitera v. Addison*, 190 Ga. App. 102, 106 (3) (378 SE2d 312) (1989). A conversion may be established even if the defendant did not apply the property to her own use. *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987). "Where a sale of collateral is, with respect to the secured party, a conversion of the collateral, there is a conversion on the part of the one who sells, as well as on the part of the one who purchases, and the purchaser may be liable regardless of his intent, and of his lack of actual knowledge of the rights of the secured party." (Citation and punctuation omitted.) *Associated Grocers Co-Op*, supra at 702 (2).

2. JCS claims it is irrelevant whether Vanliner had actual knowledge of its security interest in the truck, because Vanliner had constructive notice. We agree. It is undisputed JCS perfected its security interest by recording the lien on the title pursuant to OCGA

§ 40-3-50 (b). This statute provides in pertinent part: "When the security interest is perfected as provided for in this subsection, it shall constitute notice to *everybody* of the security interest of the holder." (Emphasis supplied.) Though we have found no cases deciding whether this use of "everybody" includes insurers of third-party tortfeasors, and the parties have cited none, "the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter." OCGA § 1-3-1 (b). JCS's perfection under the statute was therefore constructive notice to Vanliner.

3. Having established that JCS had a perfected security interest in the truck, and that Vanliner had constructive notice of it, we must next consider when the security interest extended to the insurance payment as well. Under Georgia's version of the Uniform Commercial Code the insurance payment became "proceeds" of the truck, and therefore subject to JCS's security interest, at some point in time. See OCGA §§ 11-9-306 (1), (2); 11-9-203 (3). JCS contends this occurred as soon as the payment was otherwise payable to the Easts, and that the trial court therefore erred in concluding "Vanliner can pay whoever they want, whatever they want. . . . JCS had no interest which Vanliner defeated by a payment to the Easts." Though the trial court did not further explain this holding, Vanliner contends it was correct because the payment did not become "proceeds" until it was actually received by the Easts.

The parties have not cited, nor have we found, any Georgia cases addressing this question. JCS and Vanliner have each cited cases from other jurisdictions supporting their respective positions. As discussed below, JCS's position reflects a better reading of the Georgia statutes, which differ in some respects from the statutes construed in some of Vanliner's cases. We therefore hold the trial court erred in granting Vanliner's motion for summary judgment and failing to grant JCS's.

OCGA § 11-9-306 (1) provides in pertinent part: "'Proceeds' includes whatever is *received* upon the sale, exchange, collection, or other disposition of collateral or proceeds. Insurance *payable* by reason of loss or damage to the collateral is proceeds." (Emphasis supplied.) The timing issue is not resolved by giving both "received" and "payable" their ordinary meanings because "received" is in the past tense, while "payable" refers to present susceptibility to future payment. Another rule of statutory construction, however, is that a specific provision of law prevails over a more general one. See *G. H. Bass & Co. v. Fulton County &c.*, 222 Ga. App. 118, 119 (2) (473 SE2d 253) (1996). Even if we assume without deciding that proceeds generally

are not proceeds until "received" by the debtor,[1] the General Assembly's use of "pay*able*" with specific reference to insurance payments indicates they are proceeds even before they are paid. Similar UCC provisions in Oklahoma and Illinois were similarly interpreted in *First Nat. Bank of Bethany v. American Gen. Fire &c. Co.*, 927 F2d 1126, 1128 (10th Cir. 1991), and *In the Matter of Reda, Inc.*, 54 BR 871 (Bkrtcy. N.D. Ill. 1985).

The foreign cases reaching the opposite result are either distinguishable or unpersuasive. We will address some of the distinguishable cases first.

In *Terra Western Corp. v. Berry & Co.*, 295 NW2d 693, 696-698 (Neb. 1980), the Nebraska Supreme Court interpreted a version of UCC § 9-306 that defined "proceeds" to include insurance payments that were "received," but which did not use the word "payable." In *Intl. Harvester Credit Corp. v. Valdez*, 709 P2d 1233, 1236 (Wash. App. 1985), there was no discussion of a statute comparable to OCGA § 11-9-306 (1), and the court further noted that "International's perfection of its security interest in the tractor did not provide Valdez or his insurer with notice of that interest," which is contrary to the law in Georgia for reasons discussed in Division 2 above. The Pennsylvania Superior Court's decision in *Chrysler Credit Corp. v. Smith*, 643 A2d 1098, 1100-1102 (Pa. Super. 1994), also relied heavily on the lack of actual notice to the insurer and a determination that the language of Pennsylvania's version of UCC § 9-306 did not render insurance payments "proceeds" until they were "received." In *Judah AMC & Jeep v. Old Republic Ins. Co.*, 293 NW2d 212, 214 (Iowa 1980), the Iowa Supreme Court construed Iowa's version of UCC § 9-306 in pari materia with its version of UCC § 9-318 (3), which it held required actual notice to the insurer. OCGA § 11-9-318 (3), however, requires only "notification," which under OCGA § 11-1-201 (27) is effective upon an organization no later than "when [notification] would have been brought to [the individual conducting the transaction's] attention if the organization had exercised due diligence" — in short, constructive notice. There is also no indication in *Judah AMC* that Iowa had a constructive notice statute comparable to OCGA § 40-3-50 (b). In *Fidelity Financial Svcs. v. Blaser*, 889 P2d 268, 270-271 (Okl. 1995), the Oklahoma Supreme Court declined to consider the secured party's conversion claim, holding it had been waived when it was not asserted below; compare *First Nat. Bank of Bethany*, supra.

Foreign cases we find unpersuasive include *Scholfield Bros., Inc. v. State Farm &c. Ins. Co.*, 752 P2d 661 (Kan. 1988), and *State Auto. &c. Ins. Co. v. Chrysler Credit Corp.*, 792 SW2d 626 (Ky. App. 1990).

---

[1] Cf. OCGA § 1-3-1 (d) (7): "Tense. The present or past tense includes the future."

The Kansas Supreme Court in *Scholfield Bros.* found no conversion claim based on *Intl. Harvester,* supra, and two Kansas pre-UCC cases. It then considered a claim based on Kansas' version of UCC § 9-306 (1), worded identically to OCGA § 11-9-306 (1), as a separate cause of action. 752 P2d at 664-666. We do not understand why the UCC would have been considered irrelevant to the conversion claim. The Kentucky Supreme Court in *Chrysler Credit* based its decision on public policy concerns that cannot outweigh our Georgia statutory guidance to the contrary. 792 SW2d at 629.

We agree with the court in *Reda, Inc.,* supra, that although some courts have interpreted UCC § 9-306 "to mean that proceeds do not come into existence until they are received, [cit.], the better view is that the right to payment under the insurance policy is also proceeds for these purposes and is subject to Article 9 of the U.C.C. [Cits.]" (Emphasis omitted.) 54 BR at 875. JCS's security interest therefore extended to the insurance payment before Vanliner transmitted it to the Easts. By making the payment to the Easts, Vanliner exercised dominion and control over it in a manner inconsistent with JCS's interest. Vanliner therefore converted the payment, and the trial court erred in holding otherwise. See generally *Associated Grocers Co-Op,* supra; see also *Nationwide Ins. Co. v. Bank of Forest,* 368 S2d 1273, 1275-1276 (Miss. 1979), reaching the same result without reference to the UCC. As the Mississippi Supreme Court said in that case, "[O]rdinary prudence, at the very minimum, would require a cursory investigation of title before an owner was paid the full value of the vehicle, less salvage value, in settlement of a claim. Had this been done both the [secured creditor] and [the tortfeasor's insurer] would have been protected." Id. at 1276.

4. Vanliner argues a different result is required by OCGA § 33-24-41, which provides in pertinent part: "Whenever the proceeds of or payments under a *life or accident and sickness* insurance policy or annuity contract become payable in accordance with the terms of the policy . . . and the insurer makes payment of the proceeds or payments in accordance with the terms of the policy . . . *the person then designated in the policy* . . . as being entitled to the proceeds or payments, if legally competent, shall be entitled to receive the proceeds or payments and to give full acquittance for the proceeds or payments and the payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract." (Emphasis supplied.)

It is undisputed JCS did not send such written notice to Vanliner's home office. We do not find this fact relevant, however,

because this statute does not apply to the situation before us. By its own terms, the statute applies only to a "life" policy or an "accident and sickness" policy. This terminology refers to insurance on the life or health of a person. Policies insuring vehicles, by contrast, typically provide for "collision," "liability," "comprehensive," "personal injury," or "medical payments" coverage. Moreover, in a vehicle policy there cannot be a single "person . . . designated in the policy" to receive proceeds or payments, because the identities of all the people or organizations who might become entitled to compensation as a result of a collision involving the insured vehicle are not known when the policy is issued. Though we have found no cases addressing this question, we hold OCGA § 33-24-41 does not apply to vehicle insurance policies.

5. We do point out that the failure to pay insurance proceeds to a secured party will not in all cases constitute conversion. The mere fact that a party has a security interest in collateral does not mean that it is automatically entitled to possession of insurance proceeds paid with respect to such collateral. In many cases, the parties' security agreement will spell out their respective rights with respect to insurance proceeds; for instance, the secured party may allow the debtor to retain insurance proceeds provided they are used to repair the collateral. In such case, where the secured party has no possessory right to the proceeds, it cannot be conversion for the insurer to pay such proceeds to the debtor/insured.

Such concerns do not arise in this case, however. The parties' security agreement did not contain any provisions regarding the distribution of insurance proceeds. It is undisputed that the debtor was in default, and, under OCGA § 11-9-503, "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." The insurer was placed on notice of the existence of the creditor's lien, and was thus placed under an obligation to investigate the status of title before releasing the proceeds. Had the insurer done so, it could have learned that the debtor was in default and that the creditor was entitled to the proceeds. Under these facts, the insurer's actions constituted conversion.

6. Because we find the issues discussed above dispositive, we do not reach issues concerning any actual notice Vanliner may have had of JCS's security interest. We also do not decide the possible effect of OCGA § 11-9-306 (3), providing for lapse in perfection of a security interest ten days after the debtor receives proceeds, because this issue was not raised by the parties. On remittitur, the trial court is directed to enter judgment for JCS in accordance with this opinion.

*Judgment reversed. Pope, P. J., and Blackburn, J., concur.*

*Albert A. Chapar, Jr.*, for appellant.
*Hawkins & Parnell, Alan F. Herman, Anita T. Wallace*, for appellee.