A01A0304. FULTON COUNTY v. AMERICAN FACTORS OF NASHVILLE, INC.
(551 SE2d 781)

SMITH, Presiding Judge.

This litigation arose from an accounts receivable factoring agreement between American Factors of Nashville, Inc. ("American Factors") and Total Quality Maintenance of Georgia ("TQM"). American Factors brought this action against Fulton County, TQM, and TQM's guarantors. As part of its complaint, American Factors alleged that

Fulton County erroneously paid TQM on invoices for custodial services after those invoices were sold and assigned to American Factors and notice of the assignment was provided to the county. American Factors and Fulton County filed cross-motions for partial summary judgment. In a lengthy, thoughtful, and well-written order, the trial court granted the county's motion with respect to one count of the complaint, denied the remainder of the county's motion, and granted summary judgment against the county and in favor of American Factors. After the remaining parties and issues in the case were disposed of, the county filed this appeal. Finding no error, we affirm.

We first note that the county does not, as required by Court of Appeals Rule 27 (c) (1), present or number the arguments in its brief in accordance with its enumerations of error, and it appears to omit several portions of its enumerations of error from its argument altogether. To the extent we are able to understand the county's arguments despite this failure to comply with the rule, we address them below.

1. In several related enumerations of error, Fulton County asserts that the trial court erred in granting summary judgment because the county did not receive proper notice of assignment of the invoices. We do not agree.

OCGA § 11-9-318 (3) provides, in part: "The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective."

The record shows that each invoice at issue was forwarded to the county with a form statement rubber-stamped on the face of the invoice. This statement, with the word "NOTICE" and the name, address, and telephone number of American Factors in capital letters and typeface approximately the same size as the largest typeface on the original invoice, states:

NOTICE
This account has been sold, assigned and is payable at
Brentwood, Tennessee to
AMERICAN FACTORS OF NASHVILLE, INC.
P.O. BOX 954
BRENTWOOD, TN 37024-0954
Remittance to other than American Factors of Nashville, Inc. does not constitute payment of this Invoice. American Factors of Nashville, Inc. must be given notification of any claims agreements or merchandise returns which would affect the payment of all or part of this Invoice on the due date.
615-221-3939

In addition, a cover sheet prepared by American Factors was attached to each invoice, identifying the relevant invoice by invoice number, date, and amount and including a notice and certification by TQM's president that the invoice had been assigned to American Factors.

The county contends that this notice was inadequate because it was not forwarded to the chairman of the Fulton County Board of Commissioners. To support its position, the county points to a provision in the contract between the county and TQM that the terms of the contract shall not be modified unless in writing "signed by the County's and Contractor's duly authorized representative." Although the contract does not expressly define "duly authorized representative," the county contends that the chairman of the county commission is its only duly authorized representative and therefore the only person authorized to receive notice. But this is not so. The enabling legislation for the Fulton County Board of Commissioners authorizes the chairman among other duties to "sign all official papers and other instruments and documents on behalf of the Board of Commissioners as directed or authorized by ordinance, resolution, or policy of the Board of Commissioners." Ga. L. 1982, pp. 4151-4152, § 3 (c) (3). But others may be authorized to *receive notice* on the county's behalf. See generally *Burton v. DeKalb County*, 202 Ga. App. 676, 678 (415 SE2d 647) (1992) (ante litem notice).

In addition, even if this provision could be construed as prohibiting the assignment of TQM's invoices without the consent of the county, such a construction is barred by OCGA § 11-9-318 (4):

> A term in any contract between an account debtor and an assignor, including any contract for the assignor to provide services to the account debtor, is ineffective if it *prohibits assignment of an account* or prohibits creation of a security interest in a general intangible for money due or to become due *or requires the account debtor's consent* to such assignment or security interest.

(Emphasis supplied.) We therefore consider only whether the notice given the county was sufficient to amount to "notification" under OCGA § 11-9-318 (3).

The general definitions for the Uniform Commercial Code set forth in detail the manner in which notice or notification is given and received. OCGA § 11-1-201 (26) provides:

> A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such

other actually comes to know of it. A person "receives" a notice or notification when: (a) It comes to his attention; or (b) It is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

OCGA § 11-1-201 (27) provides:

Notice, knowledge, or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence.

"Organization" includes a "government or governmental subdivision or agency." OCGA § 11-1-201 (28). These definitions show that OCGA § 11-9-318 (3) requires only constructive notice. *JCS Enterprises v. Vanliner Ins.*, 227 Ga. App. 371, 374 (489 SE2d 95) (1997).[1]

Here, the undisputed record shows that adequate notification was received under OCGA § 11-9-318 (3). Steve Fullard was the building services manager for Fulton County and was in charge of overseeing custodial services for the county. He determined which services needed to be performed by a vendor rather than in-house, developed contract specifications, received the bids, and recommended selection of a vendor. After selection of TQM on this particular contract, he was responsible for supervising TQM's performance, receiving invoices, making sure they were processed, making biweekly written or oral reports to his superior, and resolving any complaints or problems with TQM. Fullard plainly was "the individual conducting that transaction" within the meaning of OCGA § 11-1-201 (27). Fullard is named as the addressee on each invoice, and his superior testified that Fullard received the invoices and processed them for payment until the time of his termination.[2] Adequate notification of the assignment, therefore, was received by the county in accordance with OCGA § 11-9-318 (3), and the trial court did not err in so holding.

---

[1] While the county relies upon OCGA § 11-1-201 (25), defining when a person has "notice" of a fact, OCGA § 11-1-201 (26) and (27) refer specifically to "a notice or notification." *JCS Enterprises*, supra.

[2] We note, as did the trial court, that both parties have stated that Fullard is no longer employed by the county because he improperly provided county property to TQM, misused county funds, paid TQM for services not rendered, and falsified documents. But we agree with the trial court that "[w]hile it appears to the Court that Fullard and TQM may have been in collusion, there is no evidence in the record to support such a conclusion. Accordingly, the Court will not consider this potential in making its determination."

2. The trial court declined to address the county's claims of waiver, and we agree. The county did not present any facts to support this claim, other than its assertion that notice to the county was improperly given. We have rejected that contention in Division 1, supra. This enumeration of error is without merit.[3]

3. Fulton County contends that it should not be obligated on the assignment because the underlying factoring agreement between TQM and American Factors provided for the sale of invoices for "merchandise," while the contract between TQM and the county was for services. The county contends that it should be able to assert this provision of the contract between TQM and American Factors as a defense under OCGA § 11-9-318 (1) (a).

Although the county did not brief this issue below or assert it in writing, it argues that it preserved the question for appeal because counsel raised it in the trial court at oral argument. See *Mitchell v. Hamilton*, 228 Ga. App. 850, 852 (3) (493 SE2d 41) (1997). Counsel indeed mentioned this issue during oral argument, but only in passing, and only in the context of the county's contention that Article 9 does not apply to this transaction, a contention that apparently has been abandoned on appeal. Treating this brief reference as sufficient to preserve the issue for appeal is a disservice to the trial court, which did not have an opportunity to rule on this question.

But even if we were to consider the county's argument that the original purchase and security agreement between TQM and American Factors provided for the sale of accounts receivable arising from the sale of merchandise only, and assuming without deciding that the county would be authorized to assert this language as a defense after notice and payment, the county's argument is without merit. Its contentions are foreclosed by the subsequent notice and certification executed by TQM individually with respect to each invoice and delivered to the county, certifying that TQM had transferred the attached account receivable and its interest therein to American Factors "for value received." See Division 1, supra. This enumeration of error is without merit.

4. For the first time on appeal, Fulton County raises questions regarding the corporate identity of TQM and violation of the Gratuities Clause of the Georgia Constitution, Ga. Const. of 1983, Art. III, Sec. VI, Par. VI. "We do not consider issues raised for the first time on appeal, because the trial court has not had opportunity to consider them." (Citation and punctuation omitted.) *Padilla v. Melendez*, 228

---

[3] American Factors' assertion that the county's defense of waiver was itself waived by failure to amend its answer is incorrect. Inclusion of the argument in the county's motion for summary judgment sufficed. *Chrison v. H & H Interiors*, 232 Ga. App. 45, 50 (3) (500 SE2d 41) (1998) (full concurrence in Division 3).

Ga. App. 460, 461 (1) (491 SE2d 905) (1997). And "[c]onstitutional issues not raised and ruled on below are not preserved for appeal." (Punctuation and footnote omitted.) *Rahman v. Dalkon Shield Claimants Trust*, 243 Ga. App. 623, 625 (1) (532 SE2d 699) (2000).

5. Fulton County contends that it is against public policy to hold it liable to American Factors for amounts paid in error to TQM, because this would amount to punitive damages by requiring the county to pay twice. But the award against the county is not punitive in nature. "A debtor of the assignor, who has notice of the assignment, pays the debt to the assignor at his own peril. It is the established rule in the United States that an assignment for a valuable consideration, with notice to the debtor, imposes on him an equitable and moral obligation to pay the assignee." (Citations and punctuation omitted.) *Santiago v. Safeway Ins. Co.*, 196 Ga. App. 480, 482 (2) (396 SE2d 506) (1990).[4] The double payment is not punitive but simply the legal consequence of the county's payment to the wrong party over notice. Under appropriate circumstances, legal redress is available to one making a payment in error. See generally OCGA § 13-1-13; *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400 (349 SE2d 368) (1986).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JULY 3, 2001 — ▮▮▮▮▮▮

*Overtis H. Brantley, Willie J. Lovett, Jr., Denval A. Stewart, Brenda D. King*, for appellant.

*James S. Altman, Donald P. Edwards*, for appellee.

---

[4] While *Santiago* is physical precedent only, one judge having concurred in the judgment only and four concurring specially, the special concurrence does not address the principle cited here, only its application to the assignment of insurance benefits. The principle that a debtor with notice of an assignment pays the assignor at its peril is well established in Georgia law. *Metro. Life Ins. Co. v. Morrow*, 10 Ga. App. 433 (2) (73 SE 607) (1912).