**In re Michael Kevin BRANTLEY, Melinda G. Brantley, Debtors.**

**Altegra Credit Company,**

**v.**

**Ford Motor Credit Company,**

**v.**

**Michael Kevin Brantley, Melinda G. Brantley.**

No. 01–30147.

United States Bankruptcy Court, S.D. Georgia, Dublin Division.

Oct. 15, 2002.

---

Lance J. Hamilton, Vidalia, GA, for Debtors.

Barnee C. Baxter, Augusta, GA, trustee.

## ORDER

JOHN S. DALIS, Chief Judge.

Altegra Credit Company (herein "Altegra"), Ford Motor Credit Company (herein "Ford"), and Michael and Melinda Bradley (herein "Debtors") assert competing claims over distribution of insurance policy proceeds held by the Chapter 13 Trustee. Altegra is entitled to the money.

The Court has jurisdiction to determine these motions as core bankruptcy proceedings under 28 U.S.C. § 157(a) & (b)(2)(B) & (K).

The facts are as follows. On January 25, 1999 a fire destroyed the Debtors' residence located at Route 1, Box 233, Kite, Georgia. Altegra held a security deed on said property securing a debt of $72,165.84 as of the date of the fire. The property was valued at $82,000.00. Georgia Farm Bureau Mutual Insurance Company (hereinafter "Farm Bureau") refused to pay the fire loss claim made under policy of insurance number FR00A89120005. On November 30, 1999, the Debtors sued Farm Bureau in the Superior Court of Johnson County, Georgia, Case Number 99–CV–379–F. On March 19, 2001 the Debtors filed for Chapter 13 bankruptcy relief. The Debtors claimed $801.00 in personal property as exempt in their case. On March 27, 2002, the jury in the superior court case found in favor of the Debtors and awarded damages in the amount of $87,500.00.[1] Farm Bureau paid the money to the Chapter 13 Trustee. On April 13, 2001 Ford filed in the bankruptcy case a secured claim of $14,892.75 plus accruing interests based on a judgement and fi. fa.

obtained in the Superior Court of Johnson County, Georgia on August 10, 1999.

Altegra claims that as the holder of a promissory note and first priority security deed covering the destroyed house the money received under the insurance policy should be paid to it. Altegra argues that Official Code of Georgia ("O.C.G.A.") 33–24–4[2] gives it an unquestionable right to the insurance proceeds. Even though Altegra is not listed as the "loss payee" on the insurance policy, it is the mortgagee, and as such it has an insurable interest in the property because it would suffer obvious loss if the property were destroyed by fire.

Ford argues that Altegra does not have a first priority claim to the insurance proceeds because Altegra was not listed as the loss payee under the policy. Furthermore, it argues that neither the promissory note nor security deed contained any "granting" language that extends the lien holder's security interest to insurance proceeds. Ford contends that its perfected judicial lien is superior to any claim asserted by Altegra. Accordingly it requests that the insurance funds be distributed to it as a result of a the recorded judgment lien to the extent necessary to satisfy its judgment.

The Debtors contend that in their Chapter 13 bankruptcy case they can exempt $9,800.00 of the insurance proceeds under O.C.G.A. 44–13–100(a)(5)–(7). The Debtors claim that they only exempted $801.00 because the rest of their personal property was destroyed by the fire. Accordingly, the Debtors seek at least $8,999.00 from the insurance proceeds.

---

1. Attorneys fees of $17,500.00 and court costs and fees of $259.00 were approved without objection by me on June 11, 2002. The remaining amount for distribution is $70,338.81.

2. O.C.G.A. 33–24–4 states that a holder of a security deed has an insurable interest.

The following are portions of the security deed establishing Altegra's interest in the insured property:

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the *Note,* with interests, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns with power of sale, the following described property located in Johnson County, Georgia...

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. *All replacements and additions* shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property"...

UNIFORM COVENANTS: Borrower and Lender covenant and agree as follows:

. . .

5. *Hazard or Property Insurance:* Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurances shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7. All insurance policies and renewals shall be acceptable to Lender and *shall include a standard mortgage clause.* Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, *insurance proceeds shall be applied* to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds *shall be applied to the sums secured* by this Security Instrument, whether or not due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due, The 30 day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or

postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 [3] the Property is acquired by Lender, Borrower's rights to insurance proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition. . . . (Emphasis added).

Priority between Altegra and Ford is determined under Georgia law. If under Georgia law Altegra holds a valid security interest extending to the insurance proceeds then Altegra is entitled to payment.

O.C.G.A. 11–9 governs the extent of Altegra's security interest. O.C.G.A. 11–9–109(d)(11) [4] provides that the article (9) is applicable to the attachment and enforceability of security interests in real estate as provided by Code Section 11–9–203.[5] Furthermore, O.C.G.A. 11–9–109(d)(8) [6] states that Code Section 11–9–315 [7] applies with respect to proceeds and priorities in proceeds, including proceeds under a policy of insurance.

Under the security deed Altegra holds a valid security interest in the property. *See* O.C.G.A. 11–9–203(b). The security deed expressly provides for the creditor "TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument."

Ford argues, however, that Altegra does not have a security interest in any proceeds of the collateral. Ford asserts that the security deed must include specific grant language to secure proceeds of the collateral. Assuming Ford is correct and specific grant language to secure proceeds of collateral is necessary, Altegra's security deed includes sufficient language to secure the proceeds. Disclosure of a security interest in the "property and replacements and substitutions" for the property was an adequate recitation of a security interest in proceeds. *Blalock v. Aetna Finance Co.*, 511 F.Supp. 33,35–36 (N.D.Ga.1980). Here, the security deed explicitly states "*All replacements and additions* shall also be covered by this Security Instrument". The security deed provides sufficient language to grant Altegra a security interest in the proceeds of the collateral, including insurance proceeds.

However, contrary to Ford's urging, for a secured party to receive the proceeds of its collateral, it need not in-

---

**3.** Paragraph 21 of the Security Deed provides: 21. *Acceleration Remedies:* Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . .

**4.** O.C.G.A. 11–9–109(d)(11) provides that the article is inapplicable to "[t]he creation or transfer of an interest in or lien on real property, including a lease or usufruct or rents thereunder, *except* to the extent that provision is made for: (A) Liens on real property in Code Sections 11–9–203 and 11–9–308 . . . .".

**5.** O.C.G.A. 11–9–203 provides in relevant part: (f) ". . . a security interest in collateral gives the secured party the rights to proceeds. . . ."

**6.** O.C.G.A. 11–9–109(d)(8) states that the article does not apply to "a transfer of an interest in or an assignment of a claim under a policy of insurance. . . but Code Sections 11–9–315 and 11–9–322 apply with respect to proceeds and priorities in proceeds."

**7.** O.C.G.A. § 11–9–315 provides in relevant part: . . . A security interest attaches to any identifiable proceeds of collateral.

clude specific grant language to reach the proceeds as part of its security interest.

The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by Code Section 11–9–315 and is also attachment of a security interest in a supporting obligation for the collateral.

O.C.G.A. 11–9–203(f).

Thus, had Altegra not included the specific grant language in the security deed, it still holds a valid security interest in the proceeds of it's collateral. Therefore, having determined that Altegra holds a valid security interest in the collateral, Altegra has the right to receive the proceeds from it's collateral as provided by O.C.G.A. 11–9–315.

(1) A security interest...continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest...; and

ii. A security interest attaches to any identifiable proceeds of collateral.

O.C.G.A. 11–9–315(a)

■ Under § 315 the term "disposition" includes damage or destruction of collateral. *JCS Enter., Inc. v. Vanliner Ins.*, 227 Ga.App. 371, 489 S.E.2d 95 (1997). After destruction of Altegra's collateral, a security interest attaches to the proceeds, and Altegra has all rights to such proceeds.

■ Lastly, Ford argues that the security deed does not provide for a security interest in the insurance proceeds and thus it's judicial lien has priority over Altegra. However, O.C.G.A. 11–9–102(63)(E) defines "proceeds" to include insurance proceeds. Accordingly, insurance proceeds paid after the destruction of the collateral are proceeds for purposes of O.C.G.A. § 11–9–315 and subject to the lender's se-

curity interest. O.C.G.A. 11–9–102(63), O.C.G.A. 11–9–203, O.C.G.A. 11–9–315.

"Proceeds"... means the following property:...

(E) [T]o the extent of value of the collateral and to the extent payable to the debtor or the secured party, *insurance payable by reason of the loss... or damage to the collateral.* (emphasis added)

O.C.G.A. 11–9–102(63)(E).

Insurance proceeds payable by reason of loss or damage to property are included within the definition of "proceeds". *JCS* 227 Ga.App. 371, 489 S.E.2d 95 (Insurance benefits are considered "proceeds"). As such insurance proceeds are part of the secured party's security interest in the original collateral. Altegra has priority over Ford.

■ Remaining is the Debtors' contention that they should be allowed to exempt an additional $8,999.00, because their home and most of their personal property were completely destroyed in the fire. They had nothing to exempt when they filed their bankruptcy case. The Debtors claim that the award was for both the destruction of the structure upon which Altegra's security interest attached and for loss of personal property to which it did not. The Superior Court jury failed to allocate the award between the destruction of the structure and the loss of personal property. When the jury fails to specify what portion of the award is for loss of the building and which portion is for loss of personal property the lien holder has priority over the property owner. *See Federal Land Bank of Columbia v. Fullard,* 196 Ga.App. 603, 396 S.E.2d 503, 504 (1990). In *Fullard* the Court of Appeals affirmed the trial court's determination that when a jury fails to specify in it's verdict whether the award was to compensate mortgagors for their claimed personal property loss or

for the destruction of the building, the lien holder takes priority over the property owner. *Id.* Only after the lien holder has recovered its full claim, can the mortgagor recover the remainder. *Id.* There, the trial court found that even though the mortgagee held a third priority interest in the insurance proceeds, it was not entitled to receive it's equitable claim because it had release it's lien by a partial release of the secured property. *Id.* The present case is distinguishable from *Fullard* in that here there was no release by Altegra of it's lien on the property in exchange for payment by the Debtors. Altegra holds the first priority lien on the insurance proceeds. *JCS* 227 Ga.App. 371, 489 S.E.2d 95 (Insurance proceeds are subject to a lender's security interest, before payment to the debtor).

As the holder of the first priority lien in the insurance proceeds, Altegra may receive such proceeds to the extent of the secured debt at the time of the loss. *See Pacific Ins. Co. of N.Y. v. R.L. Kimsey Cotton Co.,* 114 Ga.App. 411, 415–416, 151 S.E.2d 541 (1966), O.C.G.A. § 33–24–4(b).

The debt owed to Altegra at the time of the loss was $72,165.84. The collateral at the time of loss was valued at $82,000.00. The amount of the insurance proceeds available for distribution is $70,338.81. *See* footnote 1. Having determined that Altegra's security interest extended to the insurance proceeds which interest is not avoidable under 11 U.S.C. § 522(f), and that such interest is a first priority lien on the proceeds, nothing remains for the Debtors. Since Altegra is owed more that what is available for distribution, the Debtors have no rights to the proceeds.

Accordingly it is hereby ORDERED that the Chapter 13 Trustee disburse to Altegra Credit Company all insurance proceeds paid to the Chapter 13 Trustee by Farm Bureau.