**In re Kelvin R. CREWS and Louann D. Crews, Debtors.**

**Kelvin R. Crews and Louann D. Crews, Debtors–in–Possession, Plaintiffs,**

v.

**TD Bank, N.A., f/k/a Mercantile Bank, Defendant.**

**Bankruptcy No. 3:09–bk–8641–JAF. Adversary No. 3:11–ap–809–JAF.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Jan. 12, 2012.

836

Albert H. Mickler, Jacksonville, FL, for Plaintiffs.

Guy W. Norris, Lake City, FL, for Defendant.

### ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND ENTERING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT

JERRY A. FUNK, Bankruptcy Judge.

This proceeding is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 6) and Defendant's response in opposition thereto (Doc. 13). For the reasons stated herein, Plaintiffs' Motion for Summary Judgment will be denied. Furthermore, the Court will enter summary judgment in favor of Defendant, *sua sponte.*

## I. BACKGROUND

In a previous adversary proceeding, *Mercantile Bank v. Crews,* Adv. No. 3:10–ap–0031–JAF, this Court, after a trial on the merits, entered Findings of Fact and Conclusions of Law, wherein it determined Defendant acquired an equitable lien on $350,000.00 in building loss insurance proceeds related to a fire loss that occurred on June 8, 2009. Attached as an exhibit to Plaintiffs' Motion for Summary Judgment is a copy of the Court's Findings of Facts and Conclusions of Law, entered on September 12, 2011 in *Mercantile Bank v. Crews,* Adv. No. 3:10–ap–0031–JAF, *supra* (Doc. 6 at 39–66).

In their papers, both parties maintain there are no factual disputes related to the instant adversary proceeding (Doc. 6 at 1–6; Doc. 13 at 5–13). Additionally, both parties rely on, and cite to, the facts as stated in the Court's Findings of Facts and Conclusions of Law (*see, e.g.,* Doc. 6 at 1; Doc. 13 at 5); therefore, the Court will fully incorporate the Findings of Facts and Conclusions of Law herein by reference (Doc. 6 at 39–66). For the sake of clarity, however, the Court will recite the following pertinent undisputed facts: Defendant is the mortgagee of certain real property which secures various loans made by Defendant to Plaintiffs (Doc. 6 at 40–42). The building destroyed by the June 8, 2009 fire, *supra,* was an improvement on the mortgaged real estate (Doc. 6 at 40). Pursuant to the loan documents, the building itself constituted collateral for the loans made to Plaintiffs (*id.*). The mortgages and other loan documents were duly recorded in the public records of the county

in which the property is located, Baker County (Doc. 13 at 2).

The recorded mortgages and other loan documents obligated Plaintiffs to insure the subject building against fire loss, and to designate Defendant as the mortgagee or loss-payee with a right to any insurance proceeds derived therefrom (Doc. 6 at 41). Plaintiffs insured the building against fire loss; however, they did not name Defendant as a mortgagee or loss-payee on the policy of insurance (Doc. 6 at 42). Additionally, Plaintiffs did not inform Defendant about the loss of its collateral (*id.*). Shortly after the fire, Plaintiffs requested from the insurer, and were provided, a $50,000.00 advance payment (Doc. 6 at 43).

Upon learning of the fire loss, Defendant made demand upon Plaintiffs for payment of any building loss insurance proceeds (*id.*). Additionally, Defendant requested from both Plaintiffs and the insurer that it be named as a mortgagee and loss-payee on the subject insurance policy in accordance with the recorded mortgages and other loan documents (*id.*). Plaintiffs, for their part, vehemently opposed Defendant being named as a mortgagee or loss-payee on the insurance policy; however, after conducting a title search on the subject real property, the insurance company recognized Defendant's right to be named as a mortgagee on the policy (Doc. 6 at 43–46). Ultimately, Plaintiffs acquiesced and signed a sworn statement in proof-of-loss, wherein they acknowledged Defendant's mortgage interest in the subject building and Defendant's right to any insurance proceeds related to its loss (Doc. 6 at 46).

After receipt of the sworn statement of loss, *supra*, the insurance provider issued a check for $300,000.00 (*id.*). Defendant was named on the check as an additional payee (*id.*). The check constituted the remaining balance of $350,000.00 in building loss insurance proceeds due on the policy for the fire loss (*id.*).[1] Approximately one week after receiving the subject check, Plaintiffs filed the instant Chapter 11 bankruptcy petition (*see* Doc. 6 at 46). Despite demand by Defendant for turnover of the $300,000.00 insurance proceeds check, Plaintiffs never delivered it to Defendant (Doc. 6 at 46–48). The check remains in the possession of Plaintiffs in their capacity as Chapter 11 Trustees.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court shall grant "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The movant bears the burden of proving that there is no dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, all factual inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

■ The parties maintain, and the Court finds, there are no genuine issues of material fact present in the instant dispute; therefore, the Court must determine whether Plaintiffs are entitled to summary judgment as a matter of law. Fed.

---

1. As previously noted, Plaintiffs received a $50,000.00 advance payment prior to the insurance claim being fully adjusted. These monies have not been remitted to Defendant.

R.Civ.P. 56; Fed. R. Bankr.P. 7056. The Court finds they are not.

By way of the instant adversary proceeding, Plaintiffs seek to avoid Defendant's equitable lien in the $350,000.00 in insurance proceeds pursuant to their "strong-arm" powers as Chapter 11 Debtors–in–Possession/Trustees under 11 U.S.C. § 544 (Doc. 1, Complaint). Such powers permit a trustee in bankruptcy to avoid certain transactions as a hypothetical judgment lien creditor or bona fide purchaser for value, without notice. 11 U.S.C. § 544.

In the Motion for Summary Judgment, Plaintiffs argue, *inter alia,* that Defendant's equitable lien is avoidable pursuant to the provisions of 11 U.S.C. § 544 because Defendant did not perfect its interest in the subject building loss insurance proceeds by filing a UCC–1 financing statement in conformity with Article 9 of the Uniform Commercial Code (the "UCC"), as adopted by the Florida Statutes (Fla. Stat. § 679. 1011, *et seq.*) (Doc. 6 at 6–15). Plaintiffs maintain, as a consequence, a hypothetical judgment lien creditor or bona fide purchaser would have no notice of Defendant's equitable lien on the insurance proceeds. For the reasons stated herein, the Court is not persuaded.

There is no dispute that Defendant recorded its security interest in the subject real estate, including any improvements thereon, in the public records of Baker County in conformity with Fla. Stat. § 695.01, *et seq.* Plaintiffs nevertheless argue that they are entitled to avoid the subject equitable lien in the fire insurance proceeds because any automatic perfection in the insurance proceeds that stemmed from the destruction of the collateral would have lapsed after 21 days in accordance with Fla. Stat. § 679.3151(4) since Defendant did not file a UCC–1 financing statement (Doc. 6 at 13–15).

One faulty premise of Plaintiffs' argument lies in the fact that the subject secured collateral was not personal property subject to perfection by the filing of a UCC–1 financing statement, but was an improvement to real estate subject to perfection under the State's recording statutes (Fla. Stat. § 695.01, *et seq.*). Specifically, Florida's enactment of UCC § 9–104 provides, in pertinent part, that "[t]his chapter [Article 9 of the UCC] does not apply ... [e]xcept to the extent that provision is made for fixtures in [UCC § 9–313], to the creation or transfer of an interest in or lien on real estate...." Fla. Stat. § 679.104(10).

*In re Royal West Properties, Inc.,* 441 B.R. 158 (Bankr.S.D.Fla.2010), the primary case relied on by Plaintiffs in support of their position in this regard, is inapposite as it did not involve insurance proceeds that stemmed from the destruction of real property. In that case, the debtor executed "collateral assignments" of mortgage receivables to secure notes it made to certain investors in relation to various loans. *Id.* at 161. The collateral assignments secured repayment of the investor notes, and were not absolute assignments transferring ownership of the mortgages to the investors. *Id.* at 162. The distinction here is important because, as the court noted, in order for the investors to have a valid enforceable security interest in the collateral assignments (*i.e.,* personal property), the investors had to either perfect their security interests under the applicable provisions of Florida's Uniform Commercial Code or have actual possession of the notes. *Id.* Since the collateral assignments were not an interest in the underlying realty itself, the court stated: "[r]ecording the [collateral] Assignments in accordance with the real estate recording statutes was not sufficient [to perfect the investors' interests]." *Id.*

The underlying collateral in *In re Royal West Properties, Inc.* was personal property subject to perfection by the filing of a UCC–1 financing statement. Here, the underlying security interest is in real estate. "[F]iling a UCC–1 financing statement does not perfect an interest in real property." *Id.* at 169.

Additionally, in *In re Royal West Properties, Inc.*, the court found title in the underlying real estate completely re-vested in the debtor *via* the doctrine of merger when the mortgagors' obligations under the notes were released by the debtor.[2] *Id.* at 164. The court held that the effect of the merger "extinguished" any security interests the investors may have had in the underlying mortgage receivables. *Id.* at 164, 172. The investors that had a security interest in the collateral assignments by possession of the actual notes argued that, where the debtor took back title to the underlying real estate, the investors' security interests should have automatically attached to the reacquired real estate as "proceeds" of the mortgage receivables pursuant to Fla. Stat. § 679.3151(1). *Id.* at 163–64. The court agreed; however, it also found that such automatic perfection lapsed after 21 days in accordance with Fla. Stat. § 679.3151(4).

The court stated:

If upon extinguishment of an Investor's interest in a Mortgage an Investor obtained, whether by law or in equity, an interest in the Reacquired Lot formerly encumbered by the Mortgage, the Investor is charged with recording some instrument indicating its interest in the Reacquired Lot. Absent recording of a claim of lien, a lis pendens pending imposition of a constructive trust, or some similar instrument, automatic perfection lapses on day twenty-one. *Id.* at 169.

■ The investors then argued that they should be granted an equitable lien in the underlying realty based on general principals of equity.[3] The court determined that, even if it were to find the investors had an equitable lien on the reacquired real estate, a bona fide purchaser for value or subsequent valid lien holder would have no notice of the equitable lien. *Id.* at 171–72. The court stated if the investors had obtained equitable lien judgments, or at least filed actions to impose equitable liens, prior to the petition date, "the result might have been different." *Id.* at 172. The court found any equitable lien imposed by it could be avoided by the trustee since the trustee, under such circumstances, would take without notice. *Id.* Paramount to the court's determination in this regard was that the mortgages had been extinguished; therefore, any bona fide purchaser or judicial lien creditor would have taken the property without notice of the investors' possible equitable claim(s). *See id.*

Here, the subject mortgages have not been extinguished. In addition, the documents establishing the security interest in the underlying real estate have been duly perfected in accordance with the State's recording statutes. What constitutes notice to which a bona fide purchaser or

2. The court found that the debtor had the authority to dispose of the mortgages free and clear of the investors' security interests. *Id.* at 165.

3. In Florida, the imposition of an equitable lien may be founded upon: (1) a contract showing an intent to charge a particular property with a debt or an obligation; or (2) imposition by a court of such a lien out of general considerations of fairness or justice. *First Union Nat'l Bank of Fla. v. Diamond (In re Diamond)*, 196 B.R. 635, 639 (Bankr. S.D.Fla.1996). In *In re Royal West Properties, Inc.*, the investors had to appeal to the court's general equitable powers since, unlike here, they did not have a contract showing intent to charge particular property with the debt.

judgment lien creditor is held varies among the states. *Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 200 (3d Cir.1994). Thus, the relevant inquiry here is whether Plaintiffs, as a hypothetical judgment lien creditor or bona fide purchaser for value, can prevail over Defendant's equitable lien under Florida law. The Court finds they cannot.

 Pursuant to Florida law, a bona fide purchaser or judgment lien creditor is subject to both constructive and inquiry notice. *South Motor Co. of Dade Cnty. v. Carter–Pritchett–Hodges, Inc. (In re MMH Auto. Grp., LLC)*, 385 B.R. 347, 367 (Bankr.S.D.Fla.2008). As the *In re Royal West Properties, Inc.* court stated, "an equitable lien is superior to the right of all persons except bona fide purchasers for value, or subsequent valid lien holders, without notice." 441 B.R. at 172 (*quoting Blumin v. Ellis*, 186 So.2d 286, 295–96 (Fla. 2nd DCA 1966)).

> Under Florida law, all subsequent purchasers of real property are deemed to have constructive notice of the existence and contents of any. document filed in the record chain of title, and any facts they could have ascertained if they had made a reasonable inquiry regarding the record or its contents.

*In re MMH Auto. Grp., LLC*, 385 B.R. at 367.

The Court finds the cases that follow are more analogous to the instant facts. In *In re Larter N.V.*, 49 B.R. 751 (Bankr. S.D.Fla.1985), the court found the holder of a duly perfected mortgage, which contained an insurance clause similar to the clauses in this proceeding, was entitled to receive fire insurance proceeds that stemmed from the destruction of the mortgaged collateral. *Id.* at 753–54. The court held the bankruptcy trustee could not avoid the mortgagee's equitable lien in such insurance proceeds pursuant to its strong-arm powers under 11 U.S.C. § 544,

irrespective of the fact the mortgagee did not file a UCC financing statement. *Id.* at 753–54. The court found the mortgagee's right to receive the insurance proceeds was fixed at the date of the fire loss and "could only have been extinguished by payment in full of th[e] mortgage." *Id.* (*citing Lutheran Bhd. v. J.H. Hooten*, 237 So.2d 23, 24 (Fla. 2nd DCA 1970)).

Likewise, in *Cayer v. Mid–State Fed. Sav. Bank (In re Cayer)*, 150 B.R. 829 (Bankr.M.D.Fla.1993), the court found a mortgagee's "right to casualty insurance proceeds was fixed at the time of the loss and remain[ed] unaltered." *Id.* at 831–32. The *In re Cayer* court entered summary judgment in favor of the mortgagee and directed that it receive the insurance proceeds to the extent of the mortgaged debt. *Id.*

Plaintiffs have not cited, and the Court is not aware of, any authority that holds a trustee in bankruptcy is entitled to avoid a real estate mortgagee's interest in insurance proceeds irrespective of the fact the mortgagor covenanted to provide additional protection for the mortgagee by procuring insurance. Plaintiffs cite *Beaver Crane Serv., Inc. v. Nat'l Sur. Corp.*, 391 So.2d 224 (Fla. 3rd DCA 1981) for the proposition that Defendant was required to file a UCC–1 financing statement in order to have a perfected security interest in the insurance proceeds (Doc. 6 at 10). This case, however, does not support Plaintiffs' position in this regard.

 As an initial matter, the collateral that was subject to the security agreement in *Beaver Crane Serv., Inc.* was a mechanical grove crane, which is a chattel property subject to perfection by the filing of a UCC–1 financing statement. *See id.* at 225, 227–28. The security agreement, which was recorded with the Secretary of State, provided that the crane was to be insured for the benefit of the lender. *Id.*

at 226. The court held the lender was entitled to the insurance proceeds that stemmed from damage to the crane. *Id.* at 228. The Court finds this case is inapplicable here, except to the extent that it stands for the proposition that a lender with a perfected security agreement (which provides that the collateral is to be insured for the lender's benefit) is entitled to the insurance proceeds of its collateral.

Plaintiffs maintain the real property mortgage interest of Defendant "did not continue into the insurance policy and its proceeds" (Doc. 6 at 13). The Court, however, is not persuaded. A similar argument was made in *Altegra Credit Co. v. Ford Motor Credit Co. (In re Brantley)*, 286 B.R. 918 (Bankr.S.D.Ga.2002). In that case, it was argued that the security deed in real property did not provide for a security interest in the insurance proceeds that were paid on account of the destruction by fire of the underlying realty. *Id.* at 923. The court, construing similar provisions of Georgia's Uniform Commercial Code, found the insurance proceeds that stemmed from the destruction of the collateral are "proceeds" for purposes of the UCC, and are subject to the lender's security interest. *Id.* The court stated insurance benefits are considered "proceeds" and, as such, "are part of the secured party's security interest in the original collateral."[4] *Id.* Thus, the court ordered the Chapter 13 Trustee to remit the insurance proceeds to the mortgagee. *Id.*

In this instance, since Defendant has a perfected security interest in the collateral (*i.e.,* the building and underlying real estate), it is entitled to receive the proceeds from its collateral. *See id.*

Plaintiffs further argue that the insurance policy and its proceeds are not identifiable because the parties recorded document entitled "Agreement to Provide Insurance" contains a blank under the description of the property section and blanks for the insurable value of the property (Doc. 6 at 13). This argument is likewise unpersuasive. As an initial matter, the duly recorded mortgages contain Plaintiffs' covenant to provide insurance on the subject building (*see* Doc. 6 at 50). Furthermore, the Florida Supreme Court has held that blank amounts left in an otherwise valid covenant to procure and maintain insurance may not be used to disavow such covenant(s). *Atwell v. W. Fire Ins. Co. of Fort Scott, Kan.,* 120 Fla. 694, 706 (1935).

As a final matter, it should be noted that, as of the date of the filing of the petition: (1) Plaintiffs submitted to the insurer a sworn proof-of-loss statement, wherein Defendant was identified as having a mortgage interest in the subject building and a right to any insurance proceeds related to its loss; and (2) Defendant was named as a payee on the $300,000.00 insurance proceeds check. Any encumbrancer to the insurance policy or the $300,000.00 insurance proceeds check would be charged with knowledge (constructive or inquiry) that Defendant is entitled to the building loss proceeds in accordance with the insurance policy and the underlying recorded mortgages.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Plaintiffs cannot avoid the instant equitable lien on the $350,000.00 in fire loss insurance proceeds pursuant to 11 U.S.C. § 544. As there are no facts in dispute, and Plaintiffs are not entitled to judgment as a matter of law, the Court will enter

4. It should be noted that Georgia's version of the UCC regarding a secured party's rights on disposition of collateral and in proceeds contains a similar provision concerning the lapsing after 21 days of any automatic perfection unless a UCC–1 financing statement is filed. *See* O.C.G.A. § 11–9–315(d).

summary judgment in favor of Defendant. A separate judgment will enter.